## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| InVue Security Products Inc.,        ) | |
|        ) | |
|     Plaintiff,       ) | |
|        ) | Civil Action No.: |
|     v.        ) | |
|        ) | |
| Vanguard Products Group, Inc. d/b/a     ) | |
| Vanguard Protex Global       ) | **COMPLAINT** |
|        ) | Jury Trial Demanded |
|     Defendant.     ) | |
|        ) | |

## COMPLAINT

Plaintiff InVue Security Products Inc. ("Plaintiff" or "InVue") files this Complaint for patent infringement against Defendant Vanguard Products Group, Inc. (d/b/a Vanguard Protex Global) ("Defendant" or "Vanguard") and alleges as follows:

1.      InVue brings this action pursuant to the United States Patent Act, 35 U.S.C. § 100, *et seq*. Vanguard has infringed and continues to infringe one or more claims of U.S. Patent Nos. 9,818,274 (the '274 patent); 10,062,253 (the '253 patent); 10,098,481 (the '481 patent); 9,747,765 (the '765 patent); 9,805,564 (the '564 patent); 10,043,358 (the '358 patent); 9,972,178 (the '178 patent); and 10,008,082 (the '082 patent) (collectively the "patents-in-suit").

2.      The '274 patent and the '253 patent are both entitled, "Merchandise Security System with Optical Communication." The '253 patent issued from an application that is a continuation of U.S. Patent Application No. 15/163,846, which issued as the '274 patent. Both the '274 patent and the '253 patent claim the benefit of U.S. Provisional Application Nos. 62/260,693 (filed on November 30, 2015), 62/257,380 (filed on November 9, 2015), and 62/167,382 (filed on May 28, 2015).

3.     The '481 patent is entitled "Systems and Methods for Locking a Sensor to a Base."  The '481 patent issued from a National Stage Entry of Application No. PCT/US15/46684, filed on August 25, 2015.  The '481 patent further claims the benefit of U.S. Provisional Application Nos. 62/117,249 (filed on February 17, 2015), 62/060,989 (filed on October 7, 2014), and 62/042,320 (filed on August 27, 2014).

4.     The '765, '564, and '358 patents are all entitled "Recoiler for a Merchandise Security System." The '358 patent issued from an application that is a continuation of U.S. Patent Application No. 15/725,951 (issued as the U.S. Patent No. 9,928,704), which is a continuation of U.S. Patent Application No. 15/649,127 (issued as the '564 patent), which is a continuation of 15/593,640 (issued as the '765 patent), which is a divisional of U.S. Application 15/474,338 (issued as U.S. Patent No. 9,761,101), which is a continuation from a National Stage Entry of Application No. PCT/US16/056239, filed on October 10, 2016.  Each of the '765, '564, and '358 patents claims the benefits of U.S. Provisional Application Nos. 62/297,215 (filed on February 19, 2016) and 62/240,171 (filed on October 12, 2015).

5.     The '178 patent is entitled, "Systems and Methods for Security Sensing in a Power Cable for an Article of Merchandise."  The '178 patent issued from an application that is a divisional of U.S. Patent Application No. 15/111,626 (issued as U.S. Patent No. 10,043,356), which is a continuation from a National Stage Entry of Application No. PCT/US15/012378, filed on January 22, 2015.  The '178 patent further claims the benefit of U.S. Provisional Application No. 61/930,529 (filed on January 23, 2014).

6.     The '082 patent is entitled, "Merchandise Security System with Sound Chamber."  The '082 patent claims the benefit of U.S. Provisional Application No. 62/257,804 (filed on November 20, 2015).

7.     Vanguard has committed, and continues to commit, acts of direct infringement, contributory infringement, and inducement infringement of one or more claims of the patents-in-suit.

## The Parties

8.     InVue is a corporation formed under the laws of Ohio with a principal place of business at 9201 Baybrook Lane, Charlotte, NC 28277.

9.     Vanguard is a corporation formed under the laws of Florida with a principal place of business at 720 Brooker Creek Blvd., Suite 223, Oldsmar, FL 34677.

## Jurisdiction

10.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the United States Patent Act, 35 U.S.C. § 100, *et seq*.

11.     Upon information and belief, pursuant to the U.S. Constitution and Fla. Stat. § 48.193, this Court has personal jurisdiction over Vanguard because Vanguard is incorporated in and has transacted business within the State of Florida, has contracted to supply goods in the State of Florida, and has engaged in infringing acts in the State of Florida, including in the Middle District of Florida.

12.     Venue is proper in the Court pursuant to 28 U.S.C. §§ 1391(b) and 1400 because, Vanguard has its principal place of business in this district, and upon information and belief has committed acts of infringement in this district, and is subject to personal jurisdiction here.

**Patents-in-Suit**

13.     On November 14, 2017, the United States Patent and Trademark Office duly and legally issued the '274 patent, entitled "Merchandise Security System with Optical Communication," a true and accurate copy of which is attached as Exhibit A.

14.      On August 28, 2018, the United States Patent and Trademark Office duly and legally issued the '253 patent, entitled "Merchandise Security System with Optical Communication," a true and accurate copy of which is attached as Exhibit B.

15.     On October 16, 2018, the United States Patent and Trademark Office duly and legally issued the '481 patent, entitled "Systems and Methods for Locking a Sensor to a Base," a true and accurate copy of which is attached as Exhibit C.

16.     On August 29, 2017, the United States Patent and Trademark Office duly and legally issued the '765 patent, entitled "Recoiler for a Merchandise Security System," a true and accurate copy of which is attached as Exhibit D.

17.     On October 31, 2017, the United States Patent and Trademark Office duly and legally issued the '564 patent, entitled, "Recoiler for a Merchandise Security System," a true and accurate copy of which is attached as Exhibit E.

18.     On August 7, 2018, the United States Patent and Trademark Office duly and legally issued the '358 patent, entitled "Recoiler for a Merchandise Security System," a true and accurate copy of which is attached as Exhibit F.

19.     On May 15, 2018, the United States Patent and Trademark Office duly and legally issued the '178 patent, entitled "Systems and Methods for Security Sensing in a Power Cable for an Article of Manufacture," a true and accurate copy of which is attached as Exhibit G.

20.     On June 26, 2018, the United States Patent and Trademark Office duly and legally issued the '082 patent, entitled "Merchandise Security System with Sound Chamber," a true and accurate copy of which is attached as Exhibit H.

21.     The patents-in-suit describe inventions that advanced the art and relate to security systems and methods of protecting merchandise.  Aspects and embodiments of the inventions include, for example, a cable and sensor having optical transceivers to detect if the cable is cut or disconnected.  A base may be provided with one or more engagement members to lock a sensor to the base while allowing the sensor to rotate with respect to the base while locked thereto.  An auxiliary port may be provided for connection with an auxiliary device.  A security signal may be transmitted through an auxiliary port.  A sensor may include an upper portion and a lower portion with various features such as a recess for a power cable and retaining arms.  An alarm with a sound chamber may be provided.  Multiple embodiments with additional or different features are also described.

22.     InVue is the owner of all rights, title, and interest in the patents-in-suit including the right to bring this suit for injunctive relief and damages.

23.     InVue has not authorized Vanguard or its customers to manufacture, offer to sell, sell, use, or import any product or method covered by the patents-in-suit.

24.     InVue has complied with the marking requirements of 35 U.S.C. § 287 for the patents-in-suit.

## Defendant's Infringing Activities

25.     Upon information and belief, Vanguard has infringed, and continues to infringe, the patents-in-suit by making, using, offering for sale, selling, and/or importing products, namely security systems, that practice the inventions of the patents-in-suit (hereinafter the Accused Products) and by inducing its customers to use the Accused Products.

26.     The Accused Products include, by way of example and not limitation, security systems for securing merchandise and having a cable and sensor having optical transceivers for detecting if the cable is cut or disconnected, a locking mechanism to secure a sensor to a base while still allowing rotation of the sensor, one or more auxiliary ports with contact charging and/or a lock down feature, a sensor having upper and lower portions that secure bracket arms and a power cable to an article of manufacture, and/or an alarm that includes a piezo with a wedge shape.

27.     The Accused Products, as well as components of the Accused Products, include, without limitation, devices and components Vanguard refers to as the "CR360" and "CR360-UTC", and such other security devices that function in a similar manner and operate as described above in the preceding paragraph, and as may be further identified during this action.

28.     Exemplary images of the CR360 provided by Defendant are shown below in various embodiments:



https://www.vanguardprotexglobal.com/products/cr360/ (showing a CR360 with a cable or tether attaching an article of manufacture to a base);



https://www.vanguardprotexglobal.com/products/cr360/ (showing a CR360 with a base having an "accessory port" or auxiliary port);



https://www.vanguardprotexglobal.com/9133-2/ (showing a sensor having upper and lower portions, the upper portion configured to receive one or more retaining arms for engaging the article of merchandise and disposed between the article of manufacture and the lower portion);



*Id.* (showing a power cable disposed between an upper and lower portion of a sensor)



*Id.* (showing a cable and a sensor each having an optical transceiver)



https://www.vanguardprotexglobal.com/products/cr360/ (showing a sensor configured to be releasably locked to a base);



https://www.vanguardprotexglobal.com/products/cr360-utc-2/ (showing a CR360-UTC sensor releasably locked to a base);

9



https://www.vanguardprotexglobal.com/products/cr360/ (showing alarms caused by security breach);



https://www.vanguardprotexglobal.com/products/cr360-utc-2/ (showing instructions provided by Vanguard for installation of the CR360-UTC)

29.     Vanguard's customers use the Accused Products in the United States including, for example, use by one or more retailers in the United States.

30.     The Accused Products and use of the Accused Products by Vanguard and Vanguard's customers embodies and practices the inventions claimed in the patents-in-suit.

31.     Vanguard has constructive knowledge of the patents-in-suit at least through InVue's compliance with the marking requirements of 35 U.S.C. § 287 for the patents-in-suit.

32.     Vanguard has had actual knowledge of the '274, '765, and '564 patents since at least November 21, 2017.

33.     The '178 patent issued from U.S. Application No. 15/667,284, which published as U.S. Patent Application Publication No. 2017/0330432 (the '432 publication) on November 16, 2017.

34.     Vanguard has had actual notice of the '432 publication since at least April 2, 2018 and the '178 patent since at least April 27, 2018.

35.     The '082 patent issued from U.S. Application No. 15/353,136, which published as U.S. Patent Application Publication No. 2017/0148289 (the '289 publication) on May 25, 2017.

36.     Vanguard has had actual notice of the '289 publication related to the '082 patent since at least April 2, 2018.

37.     The '481 patent issued from U.S. Application No. 15/353,136, which published as U.S. Patent Application Publication No. 2017/0245663 (the '663 publication) on August 31, 2017.

38.     Vanguard has had actual notice of the '663 publication related to the '481 patent since at least April 10, 2018.

39.     Vanguard has had actual knowledge of the '481 patent since at least October 16, 2018.

40.     On information and belief, Vanguard has had actual knowledge of the '253 patent since it was published on January 25, 2018.

41.     On information and belief, Vanguard has had actual knowledge of the '358 patent since it was published on July 26, 2018.

42.     Vanguard also has actual knowledge of each of the patents-in-suit through the filing of this Complaint.

## COUNT 1

### First Cause of Action: Direct Infringement of U.S. Patent No. 9,818,274

43.     InVue incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

44.     Vanguard's manufacture, offer for sale, sale, importation, and/or use of the Accused Products in the United States directly infringes the '274 patent.

45.     Vanguard's manufacture, offer for sale, sale, importation, and/or use of the Accused Products infringes, for example, at least claim 39 of the '274 patent.

46.     One or more of the Accused Products, for example, is a security system for securing an item of merchandise, such as a phone, tablet, camera, or the like.

47.     This security system includes a sensor having an optical transceiver that transmits and receives data. The security system also includes a cable (referred to by Vanguard as a "cord reel tether") with an optical transceiver that transmits and receives data.

48.     In the security system of the Accused Products, the optical transceivers of the sensor and the cable communicate with one another to determine if the cable has been cut or disconnected, triggering an alarm in such an event.

12

49.     Vanguard's direct infringement of the '274 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

50.     Vanguard's direct infringement of the '274 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '274 patent.

51.     Vanguard's direct infringement of the '274 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

52.     Vanguard has had actual knowledge of the '274 patent since at least November 21, 2017, when InVue notified Vanguard of the patent.

53.     Vanguard's direct infringement of the '274 patent constitutes willful infringement because the infringement continues despite an objectively high likelihood that Vanguard's conduct infringes valid claims of the '274 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct infringed valid claims of the '274 patent.

## COUNT 2

### Second Cause of Action: Contributory Infringement of U.S. Patent No. 9,818,274

54.     InVue incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

55.     Vanguard has had actual knowledge of the '274 patent since at least November 21, 2017, when InVue notified Vanguard of the '274 patent.

56.     The Accused Products are configured only for infringing use as security systems protecting items of merchandise.  For example, the Accused Products include one or more security devices that are configured only for purposes of attachment to an item of merchandise to protect the item of merchandise from theft and uses optical transceivers in the sensor and cable to cause an alarm when security is breached, for example, by the cutting of the cable.

57.     The Accused Products are not staple articles of commerce.

58.     The Accused Products are not suitable for substantial non-infringing use.

59.     The Accused Products are especially made or especially adapted for use in an infringement of the '274 patent.

60.     The use of the Accused Products by Vanguard's customers constitutes direct infringement of the '274 patent.

61.     On information and belief, Vanguard knows that the Accused Products are not staple articles of commerce, are not suitable for substantial non-infringing use, and are especially made or adapted for use in a manner that infringes InVue's patent rights associated with the '274 patent.

62.     Vanguard's actions constitute contributory infringement of the '274 patent.

63.     Vanguard's contributory infringement of the '274 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

64.     Vanguard's contributory infringement of the '274 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '274 patent.

65.     Vanguard's contributory infringement of the '274 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

66.     Vanguard's contributory infringement of the '274 patent is willful infringement because its activities continue despite an objectively high likelihood that the conduct infringes valid claims of the '274 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct constituted contributory infringement of valid claims of the '274 patent.

## COUNT 3

### Third Cause of Action: Inducement Infringement of U.S. Patent No. 9,818,274

67.     InVue incorporates by reference the allegations of paragraphs 1 through 53 as if fully set forth herein.

68.     Vanguard has had actual knowledge of the '274 patent since at least November 21, 2017, when InVue notified Vanguard of the patent.

69.     Vanguard sells and continues to sell the Accused Products to its customers with the intent that its customers will use and operate the Accused Products in the United States in a manner that infringes the '274 patent.

70.     Vanguard provides its customers with instructions regarding the infringing use and operation of the Accused Products in the United States, for example through instructional videos on its website providing detailed instructions on installation and reprogramming of the Accused Products.  *See, e.g.*, https://www.vanguardprotexglobal.com/9133-2/ (last visited October 15, 2018).

71.     Upon information and belief, Vanguard trains its customers in the infringing use and operation of the Accused Products in the United States.

72.     Upon information and belief, Vanguard has observed its customers using and operating the Accused Products in the United States in an infringing manner.

73.     Upon information and belief, Vanguard is aware or should have known that use and operation of the Accused Products in the United States by Vanguard or its customers would directly infringe the '274 patent.

74.     Vanguard's actions to aid and abet its customers to directly infringe the '274 patent with knowledge that use of the Accused Products in the United States would directly infringe the '274 patent constitutes inducement infringement.

75.     Vanguard's inducement infringement of the '274 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

76.     Vanguard's inducement infringement of the '274 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '274 patent.

77.     Vanguard's inducement infringement of the '274 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

78.     Vanguard's inducement infringement of the '274 patent is willful infringement because these activities continue despite an objectively high likelihood that the conduct infringes valid claims of the '274 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct induces infringement of valid claims of the '274 patent.

## COUNT 4

### Fourth Cause of Action: Direct Infringement of U.S. Patent No. 10,062,253

79.     InVue incorporates by reference the allegations of the paragraphs 1 through 42 as if fully set forth herein.

80.     Vanguard's manufacture, offer for sale, sale, importation, and/or use of the Accused Products in the United States directly infringes the '253 patent.

81.     Vanguard's manufacture, offer for sale, sale, importation, and/or use of the Accused Products infringes, for example, at least claim 1 of the '253 patent.

82.     One or more of the Accused Products, for example, is a security system for securing an item of merchandise, such as a phone, tablet, camera, or the like.

83.     This security system includes a sensor that is attached to a selected item of merchandise.  The sensor includes an optical transceiver.

84.     The security system of the Accused Products also includes a cable (referred to by Vanguard as a "cord reel tether") with an optical transceiver.

85.     In the security system of the Accused Products, the sensor and the cable are connected to one another such that their respective optical transceivers communicate optical signals in order to detect disconnection of the cable from the sensor, triggering an alarm in such an event.

86.     Vanguard's direct infringement of the '253 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

87.     Vanguard's direct infringement of the '253 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from

making, using, selling, offering to sell, or importing products embodying the invention patented in the '253 patent.

88.     Vanguard's direct infringement of the '253 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

89.     On information and belief, Vanguard has had actual knowledge of the '253 patent since it was published on January 25, 2018 because the application that resulted in the '253 patent and its file history in the United States Patent and Trademark Office (USPTO) were publicly available on the USPTO's Public Application Information Retrieval website beginning on January 25, 2018, the date of publication of the application, and the Issue Notification attached as Exhibit I, was publicly available on August 8, 2018.  Upon information and belief, because the application that led to the '253 patent was a continuation of the application that led to the '274 patent, which was disclosed to Vanguard (*see* paragraph 52), Vanguard would have monitored the prosecution of the application that resulted in the '253 patent and been aware of its issuance on August 28, 2018.

90.     Vanguard's direct infringement of the '253 patent constitutes willful infringement because the infringement continues despite an objectively high likelihood that Vanguard's conduct infringes valid claims of the '253 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct infringed valid claims of the '253 patent.

## COUNT 5

### Fifth Cause of Action: Contributory Infringement of U.S. Patent No. 10,062,253

91.     InVue incorporates by reference the allegations of paragraphs 1 through 42 and 79 through 90 as if fully set forth herein.

92.     On information and belief, Vanguard has had actual knowledge of the '253 patent since it was published on January 25, 2018 because the application that resulted in the '253 patent and its file history in the United States Patent and Trademark Office (USPTO) were publicly available on the USPTO's Public Application Information Retrieval website beginning on January 25, 2018, the date of publication of the application, and the Issue Notification attached as Exhibit I, was publicly available on August 8, 2018.  Upon information and belief, because the application that led to the '253 patent was a continuation of the application that led to the '274 patent, which was disclosed to Vanguard (*see* paragraph 52), Vanguard would have monitored the prosecution of the application that resulted in the '253 patent and been aware of its issuance on August 28, 2018.

93.     The Accused Products are configured only for infringing use as security systems protecting items of merchandise.  For example, the Accused Products include one or more security devices that are configured only for purposes of attachment to an item of merchandise to protect the item of merchandise from theft and uses optical transceivers in the sensor and cable to cause an alarm when security is breached, for example, by disconnecting the cable from the sensor.

94.     The Accused Products are not staple articles of commerce.

95.     The Accused Products are not suitable for substantial non-infringing use.

96.     The Accused Products are especially made or especially adapted for use in an infringement of the '253 patent.

97.     The use of the Accused Products by Vanguard's customers constitutes direct infringement of the '253 patent.

98.     On information and belief, Vanguard knows that the Accused Products are not staple articles of commerce, are not suitable for substantial non-infringing use, and are especially made or adapted for use in a manner that infringes InVue's patent rights associated with the '253 patent.

99.     Vanguard's actions constitute contributory infringement of the '253 patent.

100.     Vanguard's contributory infringement of the '253 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

101.     Vanguard's contributory infringement of the '253 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '253 patent.

102.     Vanguard's contributory infringement of the '253 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

103.     Vanguard's contributory infringement of the '253 patent is willful infringement because its activities continue despite an objectively high likelihood that the conduct infringes valid claims of the '253 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct constituted contributory infringement of valid claims of the '253 patent.

## COUNT 6

### Sixth Cause of Action: Inducement Infringement of U.S. Patent No. 10,062,253

104.     InVue incorporates by reference the allegations of paragraphs 1 through 42 and 79 through 90 as if fully set forth herein.

105.    On information and belief, Vanguard has had actual knowledge of the '253 patent since it was published on January 25, 2018 because the application that resulted in the '253 patent and its file history in the United States Patent and Trademark Office (USPTO) were publicly available on the USPTO's Public Application Information Retrieval website beginning on January 25, 2018, the date of publication of the application, and the Issue Notification attached as Exhibit I, was publicly available on August 8, 2018.  Upon information and belief, because the application that led to the '253 patent was a continuation of the application that led to the '274 patent, which was disclosed to Vanguard (*see* paragraph 52), Vanguard would have monitored the prosecution of the application that resulted in the '253 patent and been aware of its issuance on August 28, 2018.

106.    Vanguard sells and continues to sell the Accused Products to its customers with the intent that its customers will use and operate the Accused Products in the United States in a manner that infringes the '253 patent.

107.    Vanguard provides its customers with instructions regarding the infringing use and operation of the Accused Products in the United States, for example through instructional videos on its website providing detailed instructions on installation and reprogramming of the Accused Products.  *See, e.g.*, https://www.vanguardprotexglobal.com/9133-2/ (last visited October 15, 2018).

108.    Upon information and belief, Vanguard trains its customers in the infringing use and operation of the Accused Products in the United States.

109.    Upon information and belief, Vanguard has observed its customers using and operating the Accused Products in the United States in an infringing manner.

110.    Upon information and belief, Vanguard is aware or should have known that use and operation of the Accused Products in the United States by Vanguard or its customers would directly infringe the '253 patent.

111.    Vanguard's actions to aid and abet its customers to directly infringe the '253 patent with knowledge that use of the Accused Products in the United States would directly infringe the '253 patent constitutes inducement infringement.

112.    Vanguard's inducement infringement of the '253 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

113.    Vanguard's inducement infringement of the '253 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '253 patent.

114.    Vanguard's inducement infringement of the '253 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

115.    Vanguard's inducement infringement of the '253 patent is willful infringement because these activities continue despite an objectively high likelihood that the conduct infringes valid claims of the '253 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct induces infringement of valid claims of the '253 patent.

## COUNT 7

### Seventh Cause of Action: Direct Infringement of U.S. Patent No. 10,098,481

116.    InVue incorporates by reference the allegations of the paragraphs 1 through 42 as if fully set forth herein.

117.    Vanguard's manufacture, offer for sale, sale, importation, and/or use of the Accused Products in the United States directly infringes the '481 patent.

118.    Vanguard's manufacture, offer for sale, sale, importation, and/or use of the Accused Products infringes, for example, at least claim 52 of the '481 patent.

119.    One or more of the Accused Products, for example, is a system for displaying an article of merchandise, such as a phone, tablet, camera, or the like.   This display system includes a sensor configured to be secured to a selected article of merchandise and to detect removal of the article of merchandise from the sensor.

120.    One or more of the Accused Products further includes a base (sometimes referred to by Vanguard as a "pedestal") which removably supports the sensor.  The Accused Products are designed such that the sensor can be removed from the pedestal and seated on the pedestal.

121.    A tether (sometimes referred to as a "cord reel tether" by Vanguard) is attached to the pedestal, which includes an opening that is configured to receive the tether and allow the tether to extend and retract relative to the pedestal.  The pedestal also includes at least one engagement member that can releasably lock the sensor to the pedestal when the sensor is seated on the pedestal.  The sensor can rotate with respect to the pedestal while locked to the pedestal.

122.    One or more of the Accused Products further includes a cam mechanism in operable engagement with the at least one engagement member of the pedestal and can be rotated to cause the at least one engagement member to move inward within the opening for locking the sensor on the pedestal in a locked position or move outward for unlocking the sensor from the base in an unlocked position.

123.    Each of the cam mechanism and the at least one engagement member includes an engagement element.  The engagement elements have complementary shapes such that one

engagement element receives the other engagement element for moving the at least one engagement member between the unlocked position and the locked position.

124.    Vanguard's direct infringement of the '481 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

125.    Vanguard's direct infringement of the '481 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '481 patent.

126.    Vanguard's direct infringement of the '481 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

127.    Vanguard has had actual notice of the '663 publication since at least April 10, 2018, when InVue notified Vanguard of the publication.

128.    Upon information and belief, Vanguard would have monitored the prosecution of the application that resulted in the '481 patent and been aware of its issuance on October 16, 2018.

129.    Vanguard's direct infringement of the '481 patent constitutes willful infringement because the infringement continues despite an objectively high likelihood that Vanguard's conduct infringes valid claims of the '481 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct infringed valid claims of the '481 patent.

## COUNT 8

### Eighth Cause of Action: Contributory Infringement of U.S. Patent No. 10,098,481

130.    InVue incorporates by reference the allegations of paragraphs 1 through 42 and 116 through 129 as if fully set forth herein.

131.    Vanguard has had actual notice of the '663 publication since at least April 10, 2018, when InVue notified Vanguard of the publication.

132.    Upon information and belief, Vanguard would have monitored the prosecution of the application that resulted in the '481 patent and been aware of its issuance on October 16, 2018.

133.    The Accused Products are configured only for infringing use as display systems for an article of merchandise.  For example, the Accused Products include a sensor and base (or "pedestal") attached together by a tether, including an article of merchandise secured to the sensor, which detects removal of the article of merchandise from the sensor.  The base (which removably supports the sensor) includes at least one engagement member that can releasably lock the sensor to the base when the sensor is seated on the base, while maintaining the ability of the sensor to rotate with respect to the base.  Thus secured, these articles of merchandise may be displayed and interacted with, while alleviating concern for theft.

134.    The Accused Products are not staple articles of commerce.

135.    The Accused Products are not suitable for substantial non-infringing use.

136.    The Accused Products are especially made or especially adapted for use in an infringement of the '481 patent.

137.    The use of the Accused Products by Vanguard's customers constitutes direct infringement of the '481 patent.

138.    On information and belief, Vanguard knows that the Accused Products are not staple articles of commerce, are not suitable for substantial non-infringing use, and are especially made or adapted for use in a manner that infringes InVue's patent rights associated with the '481 patent.

139.    Vanguard's actions constitute contributory infringement of the '481 patent.

140.    Vanguard's contributory infringement of the '481 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

141.    Vanguard's contributory infringement of the '481 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '481 patent.

142.    Vanguard's contributory infringement of the '481 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

143.    Vanguard's contributory infringement of the '481 patent is willful infringement because its activities continue despite an objectively high likelihood that the conduct infringes valid claims of the '481 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct constituted contributory infringement of valid claims of the '481 patent.

## COUNT 9

### Ninth Cause of Action: Inducement Infringement of U.S. Patent No. 10,098,481

144.    InVue incorporates by reference the allegations of paragraphs 1 through 42 and 116 through 129 as if fully set forth herein.

145.     Vanguard has had actual notice of the '663 publication since at least April 10, 2018, when InVue notified Vanguard of the publication.

146.     Upon information and belief, Vanguard would have monitored the prosecution of the application that resulted in the '481 patent and been aware of its issuance on October 16, 2018.

147.     Vanguard sells and continues to sell the Accused Products to its customers with the intent that its customers will use and operate the Accused Products in the United States in a manner that infringes the '481 patent.

148.     Vanguard provides its customers with instructions regarding the infringing use and operation of the Accused Products in the United States, for example through instructional videos on its website providing detailed instructions on installation and reprogramming of the Accused Products.  *See, e.g.*, https://www.vanguardprotexglobal.com/9133-2/ and https://www.vanguardprotexglobal.com/products/cr360/ (last visited October 15, 2018).

149.     Upon information and belief, Vanguard trains its customers in the infringing use and operation of the Accused Products in the United States.

150.     Upon information and belief, Vanguard has observed its customers using and operating the Accused Products in the United States in an infringing manner.

151.     Upon information and belief, Vanguard is aware or should have known that use and operation of the Accused Products in the United States by Vanguard or its customers would directly infringe the '481 patent.

152.     Vanguard's actions to aid and abet its customers to directly infringe the '481 patent with knowledge that use of the Accused Products in the United States would directly infringe the '481 patent constitutes inducement infringement.

27

153.    Vanguard's inducement infringement of the '481 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

154.    Vanguard's inducement infringement of the '481 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '253 patent.

155.    Vanguard's inducement infringement of the '481 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

156.    Vanguard's inducement infringement of the '481 patent is willful infringement because these activities continue despite an objectively high likelihood that the conduct infringes valid claims of the '481 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct induces infringement of valid claims of the '481 patent.

## COUNT 10

### Tenth Cause of Action: Direct Infringement of U.S. Patent No. 9,747,765

157.    InVue incorporates by reference the allegations of the paragraphs 1 through 42 as if fully set forth herein.

158.    Vanguard's manufacture, offer for sale, sale, importation, and/or use of the Accused Products in the United States directly infringes the '765 patent.

159.    Vanguard's manufacture, offer for sale, sale, importation, and/or use of the Accused Products infringes, for example, at least claim 1 of the '765 patent.

160.    One or more of the Accused Products, for example, is a security system for protecting an article of merchandise, such as a phone, tablet, camera, or the like, along with a

second auxiliary device connected to the Accused Product via an "Accessory Port" to enable what Vanguard refers to as "Cross-Merchandising."

161.    This security system includes a sensor that is attached to a selected article of merchandise.

162.    The security system of the Accused Products also includes a base upon which the sensor and attached article of merchandise may rest and, when desired, be removed from the base.  The base and sensor of the Accused Products both include electrical contacts that engage when the sensor is resting on the base.  When engaged, these electrical contacts enable the transfer of electrical power for charging the article of merchandise attached to the sensor.

163.    The security system of the Accused Products also includes a cable (referred to by Vanguard as a "cord reel tether"), which connects to both the base and the sensor.

164.    When the sensor of the Accused Products is seated on the base, a lock mechanism enables the sensor and base to be locked together, preventing the removal of the sensor.  Once the lock mechanism is unlocked, the sensor may again be removed from the base.

165.    The base of one or more of the Accused Products further includes an auxiliary port, sometimes referred to by Vanguard as an "Accessory Port."  A cable connector joins the base (through the Accessory Port) to an auxiliary device, such as, for example, a smart watch to allow what Vanguard sometimes refers to as "Cross Merchandising."

166.    In addition to its role as a means of physical security, the cable (or "cord reel tether") of the Accused Products further carries a security signal, which is likewise transmitted through the auxiliary port (or "Accessory Port").  The Accused Products utilize this security signal to detect the cutting of the cable, the removal of the cable from the sensor, and the removal of the connector from the auxiliary port.

167.    Vanguard's direct infringement of the '765 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

168.    Vanguard's direct infringement of the '765 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '765 patent.

169.    Vanguard's direct infringement of the '765 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

170.    Vanguard has had actual knowledge of the '765 patent since at least November 21, 2017, when InVue notified Vanguard of the patent.

171.    Upon information and belief, Vanguard would have monitored the prosecution of the application that resulted in the '765 patent and been aware of its issuance on August 29, 2017.

172.    Vanguard's direct infringement of the '765 patent constitutes willful infringement because the infringement continues despite an objectively high likelihood that Vanguard's conduct infringes valid claims of the '765 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct infringed valid claims of the '765 patent.

## COUNT 11

### Eleventh Cause of Action: Contributory Infringement of U.S. Patent No. 9,747,765

173.    InVue incorporates by reference the allegations of paragraphs 1 through 42 and 157 through 172 as if fully set forth herein.

174.    Vanguard has had actual knowledge of the '765 patent since at least November 21, 2017, when InVue notified Vanguard of the patent.

175.    Upon information and belief, Vanguard would have monitored the prosecution of the application that resulted in the '765 patent and been aware of its issuance on August 29, 2017.

176.    The Accused Products are configured only for infringing use as security systems protecting articles of merchandise and auxiliary devices attached through their auxiliary ports. For example, the Accused Products are configured to display and protect articles of merchandise by charging the article of merchandise using electrical contacts on a base, locking a sensor, which is attached to an article of merchandise, to the base when the sensor is rested on the base and by attaching a cable (referred to by Vanguard as a "cord reel tether") to the sensor and the base to prevent theft when the system is unlocked, permitting the sensor to be lifted from the base.  By way of further example, the Accused products are configured to protect auxiliary devices via a connector between the base's auxiliary port (sometimes referred to by Vanguard as the "Accessory Port") and the auxiliary device, wherein a security signal is transferred through the cord reel tether and the auxiliary port connector to detect cutting of the cord reel tether, removal of the cord reel tether from the sensor, and removal of the auxiliary port connector from its port.

177.    The Accused Products are not staple articles of commerce.

178.    The Accused Products are not suitable for substantial non-infringing use.

179.    The Accused Products are especially made or especially adapted for use in an infringement of the '765 patent.

180.    The use of the Accused Products by Vanguard's customers constitutes direct infringement of the '765 patent.

181.    On information and belief, Vanguard knows that the Accused Products are not staple articles of commerce, are not suitable for substantial non-infringing use, and are especially made or adapted for use in a manner that infringes InVue's patent rights associated with the '765 patent.

182.    Vanguard's actions constitute contributory infringement of the '765 patent.

183.    Vanguard's contributory infringement of the '765 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

184.    Vanguard's contributory infringement of the '765 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '765 patent.

185.    Vanguard's contributory infringement of the '765 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

186.    Vanguard's contributory infringement of the '765 patent is willful infringement because its activities continue despite an objectively high likelihood that the conduct infringes valid claims of the '765 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct constituted contributory infringement of valid claims of the '765 patent.

## COUNT 12

### Twelfth Cause of Action: Inducement Infringement of U.S. Patent No. 9,747,765

187.    InVue incorporates by reference the allegations of paragraphs 1 through 42 and 157 through 172 as if fully set forth herein.

188.    Vanguard has had actual knowledge of the '765 patent since at least November 21, 2017, when InVue notified Vanguard of the patent.

189.    Upon information and belief, Vanguard would have monitored the prosecution of the application that resulted in the '765 patent and been aware of its issuance on August 29, 2017.

190.    Vanguard sells and continues to sell the Accused Products to its customers with the intent that its customers will use and operate the Accused Products in the United States in a manner that infringes the '765 patent.

191.    Vanguard provides its customers with instructions regarding the infringing use and operation of the Accused Products in the United States, for example through instructional videos on its website providing detailed instructions on installation and reprogramming of the Accused Products.  *See, e.g.*, https://www.vanguardprotexglobal.com/9133-2/ (last visited October 15, 2018).

192.    Upon information and belief, Vanguard trains its customers in the infringing use and operation of the Accused Products in the United States.

193.    Upon information and belief, Vanguard has observed its customers using and operating the Accused Products in the United States in an infringing manner.

194.    Upon information and belief, Vanguard is aware or should have known that use and operation of the Accused Products in the United States by Vanguard or its customers would directly infringe the '765 patent.

195.    Vanguard's actions to aid and abet its customers to directly infringe the '765 patent with knowledge that use of the Accused Products in the United States would directly infringe the '765 patent constitutes inducement infringement.

196.    Vanguard's inducement infringement of the '765 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

197.    Vanguard's inducement infringement of the '765 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '765 patent.

198.    Vanguard's inducement infringement of the '765 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

199.    Vanguard's inducement infringement of the '765 patent is willful infringement because these activities continue despite an objectively high likelihood that the conduct infringes valid claims of the '765 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct induces infringement of valid claims of the '765 patent.

## COUNT 13

### Thirteenth Cause of Action: Direct Infringement of U.S. Patent No. 9,805,564

200.     InVue incorporates by reference the allegations of the paragraphs 1 through 42 as if fully set forth herein.

201.     Vanguard's manufacture, offer for sale, sale, importation, and/or use of the Accused Products in the United States directly infringes the '564 patent.

202.     Vanguard's manufacture, offer for sale, sale, importation, and/or use of the Accused Products infringes, for example, at least claim 1 of the '564 patent.

203.     One or more of the Accused Products, for example, is a security system for protecting from theft an article of merchandise, such as a phone, tablet, camera, or the like, along with a second auxiliary device connected to the Accused Product via an "Accessory Port" to enable what Vanguard refers to as "Cross-Merchandising."

204.     This security system includes a sensor that is attached to a selected article of merchandise.

205.     The security system of the Accused Products also includes a base upon which the sensor and attached article of merchandise may rest and, when desired, be removed from the base.  The base and sensor of the Accused Products both include electrical contacts that engage when the sensor is resting on the base.  When engaged, these electrical contacts enable the transfer of electrical power for charging the article of merchandise attached to the sensor.

206.     The security system of the Accused Products also includes a cable (referred to by Vanguard as a "cord reel tether"), which connects to both the base and the sensor.

207.     The base of one or more of the Accused Products further includes an auxiliary port, sometimes referred to by Vanguard as an "Accessory Port."  A cable connector joins the

base (through the Accessory Port) to an auxiliary device, such as, for example, a smart watch to allow what Vanguard sometimes refers to as "Cross Merchandising."

208.    In addition to its role as a means of physical security, the cable (or "cord reel tether") of the Accused Products further carries a security signal, which is likewise transmitted through the auxiliary port (or "Accessory Port").  The Accused Products utilize this security signal to detect whether the cable is cut, shorted, or disconnected and further detect removal of the auxiliary device from the base.

209.    Vanguard's direct infringement of the '564 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

210.    Vanguard's direct infringement of the '564 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '564 patent.

211.    Vanguard's direct infringement of the '564 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

212.    Vanguard has had actual knowledge of the '564 patent since at least November 21, 2017, when InVue notified Vanguard of the patent.

213.     Vanguard's direct infringement of the '564 patent constitutes willful infringement because the infringement continues despite an objectively high likelihood that Vanguard's conduct infringes valid claims of the '564 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct infringed valid claims of the '564 patent.

## COUNT 14

### Fourteenth Cause of Action: Contributory Infringement of U.S. Patent No. 9,805,564

214.    InVue incorporates by reference the allegations of paragraphs 1 through 42 and 200 through 213 as if fully set forth herein.

215.    Vanguard has had actual knowledge of the '564 patent since at least November 21, 2017, when InVue notified Vanguard of the patent.

216.    The Accused Products are configured only for infringing use as security systems protecting from theft articles of merchandise and auxiliary devices attached through their auxiliary ports.

217.    For example, the one or more of the Accused Products include a sensor configured to be secured to the article of merchandise and base (sometimes referred to by Vanguard as a "pedestal") for removably supporting the sensor and the article of merchandise. The pedestal and the sensor include one or more electrical contacts configured to contact one another when the sensor is seated on the pedestal for transferring electrical power for charging the article of merchandise.  The pedestal further includes an auxiliary port (sometimes referred to by Vanguard as the "Accessory Port") that can operably connect to the auxiliary device. By way of further example, the Accused products include a cable (sometimes referred to by Vanguard as a "cord reel tether") that can be operably connected to the sensor and the pedestal.  A security signal can be transmitted through the cable and the auxiliary port for detecting the cable being cut, shorted, or disconnected and removal of the auxiliary device from the pedestal.

218.    The Accused Products are not staple articles of commerce.

219.    The Accused Products are not suitable for substantial non-infringing use.

220.    The Accused Products are especially made or especially adapted for use in an infringement of the '564 patent.

221.    The use of the Accused Products by Vanguard's customers constitutes direct infringement of the '564 patent.

222.    On information and belief, Vanguard knows that the Accused Products are not staple articles of commerce, are not suitable for substantial non-infringing use, and are especially made or adapted for use in a manner that infringes InVue's patent rights associated with the '564 patent.

223.    Vanguard's actions constitute contributory infringement of the '564 patent.

224.    Vanguard's contributory infringement of the '564 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

225.    Vanguard's contributory infringement of the '564 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '564 patent.

226.    Vanguard's contributory infringement of the '564 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

227.    Vanguard's contributory infringement of the '564 patent is willful infringement because its activities continue despite an objectively high likelihood that the conduct infringes valid claims of the '564 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct constituted contributory infringement of valid claims of the '564 patent.

## COUNT 15

**Fifteenth Cause of Action: Inducement Infringement of U.S. Patent No. 9,805,564**

228.    InVue incorporates by reference the allegations of paragraphs 1 through 42 and 200 through 213 as if fully set forth herein.

229.    Vanguard has had actual knowledge of the '564 patent since at least November 21, 2017, when InVue notified Vanguard of the patent.

230.    Vanguard sells and continues to sell the Accused Products to its customers with the intent that its customers will use and operate the Accused Products in the United States in a manner that infringes the '564 patent.

231.    Vanguard provides its customers with instructions regarding the infringing use and operation of the Accused Products in the United States, for example through instructional videos on its website providing detailed instructions on installation and reprogramming of the Accused Products. *See, e.g.*, https://www.vanguardprotexglobal.com/9133-2/ (last visited October 15, 2018).

232.    Upon information and belief, Vanguard trains its customers in the infringing use and operation of the Accused Products in the United States.

233.    Upon information and belief, Vanguard has observed its customers using and operating the Accused Products in the United States in an infringing manner.

234.    Upon information and belief, Vanguard is aware or should have known that use and operation of the Accused Products in the United States by Vanguard or its customers would directly infringe the '564 patent.

235.    Vanguard's actions to aid and abet its customers to directly infringe the '564 patent with knowledge that use of the Accused Products in the United States would directly infringe the '564 patent constitutes inducement infringement.

236.    Vanguard's inducement infringement of the '564 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

237.    Vanguard's inducement infringement of the '564 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '564 patent.

238.    Vanguard's inducement infringement of the '564 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

239.    Vanguard's inducement infringement of the '564 patent is willful infringement because these activities continue despite an objectively high likelihood that the conduct infringes valid claims of the '564 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct induces infringement of valid claims of the '564 patent.

## COUNT 16

### Sixteenth Cause of Action: Direct Infringement of U.S. Patent No. 10,043,358

240.    InVue incorporates by reference the allegations of the paragraphs 1 through 42 as if fully set forth herein.

241.    Vanguard's manufacture, offer for sale, sale, importation, and/or use of the Accused Products in the United States directly infringes the '358 patent.

242.     Vanguard's manufacture, offer for sale, sale, importation, and/or use of the Accused Products infringes, for example, at least claim 1 of the '358 patent.

243.     One or more of the Accused Products, for example, is a security system for displaying and protecting from theft an article of merchandise, such as a phone, tablet, camera, or the like, along with a second auxiliary device connected to the Accused Product via an "Accessory Port" to enable what Vanguard refers to as "Cross-Merchandising."

244.     This security system includes a sensor that is attached to a selected article of merchandise and which detects removal of the article of merchandise from the sensor.

245.     The security system of the Accused Products also includes a base upon which the sensor and attached article of merchandise may rest and, when desired, be removed from the base.  The base includes an auxiliary port (sometimes referred to by Vanguard as an "Accessory Port") that is used to connect the Accused Product to an auxiliary device, such as, for example, a smart watch.

246.     The security system of the Accused Products also includes a cable (referred to by Vanguard as a "cord reel tether"), which connects to both the base and the sensor.

247.     Through the auxiliary port (or "Accessory Port"), the base transfers power to the auxiliary device to allow what Vanguard sometimes refers to as "Cross Merchandising."

248.     The Accused Products utilize a security signal transmitted through the base's auxiliary port to detect removal of the auxiliary device from the base.

249.     Vanguard's direct infringement of the '358 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

250.    Vanguard's direct infringement of the '358 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '358 patent.

251.    Vanguard's direct infringement of the '358 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

252.    On information and belief, Vanguard has had actual knowledge of the '358 patent since it was published on July 26, 2018 because the application that resulted in the '358 patent and its file history in the United States Patent and Trademark Office (USPTO) were publicly available on the USPTO's Public Application Information Retrieval website beginning on that date, and the Issue Notification attached as Exhibit J, was publicly available on July 26, 2018. Upon information and belief, because the application that led to the '358 patent was a continuation of the applications that led to the '765 and '564 patents, which were disclosed to Vanguard (*see* paragraphs 170-171, 212), Vanguard would have monitored the prosecution of the application that resulted in the '358 patent and been aware of its issuance on August 7, 2018.

253.    Vanguard's direct infringement of the '358 patent constitutes willful infringement because the infringement continues despite an objectively high likelihood that Vanguard's conduct infringes valid claims of the '358 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct infringed valid claims of the '358 patent.

## COUNT 17

### Seventeenth Cause of Action: Contributory Infringement of U.S. Patent No. 10,043,358

254.    InVue incorporates by reference the allegations of paragraphs 1 through 42 and

240 through 253 as if fully set forth herein.

255.    On information and belief, Vanguard has had actual knowledge of the '358 patent

since it was published on July 26, 2018 because the application that resulted in the '358 patent

and its file history in the United States Patent and Trademark Office (USPTO) were publicly

available on the USPTO's Public Application Information Retrieval website beginning on that

date, and the Issue Notification attached as Exhibit J, was publicly available on July 26, 2018.

Upon information and belief, because the application that led to the '358 patent was a

continuation of the applications that led to the '765 and '564 patents, which were disclosed to

Vanguard (*see* paragraphs 170-171, 212), Vanguard would have monitored the prosecution of the

application that resulted in the '358 patent and been aware of its issuance on August 7, 2018.

256.    The Accused Products are configured only for infringing use as security systems

for displaying and protecting from theft articles of merchandise and auxiliary devices attached

through their auxiliary ports.  For example, the Accused Products are configured to display and

protect articles of merchandise by having a sensor, which is attached to an article of

merchandise, detect removal of the article of merchandise from the sensor.  By way of further

example, the Accused Products are configured such that the sensor can rest upon, or be lifted

from, a base having an auxiliary port (sometimes referred to by Vanguard as an "Accessory

Port").  The sensor and base are both connected to a cable (referred to by Vanguard as a "cord

reel tether") to prevent theft.  By way of further example, the Accused products are configured to

protect auxiliary devices via a connector between the base's auxiliary port and the auxiliary

device, wherein a security signal is transmitted through the auxiliary port to detect removal of the auxiliary device from the base.

257.     The Accused Products are not staple articles of commerce.

258.     The Accused Products are not suitable for substantial non-infringing use.

259.     The Accused Products are especially made or especially adapted for use in an infringement of the '358 patent.

260.     The use of the Accused Products by Vanguard's customers constitutes direct infringement of the '358 patent.

261.     On information and belief, Vanguard knows that the Accused Products are not staple articles of commerce, are not suitable for substantial non-infringing use, and are especially made or adapted for use in a manner that infringes InVue's patent rights associated with the '358 patent.

262.     Vanguard's actions constitute contributory infringement of the '358 patent.

263.     Vanguard's contributory infringement of the '358 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

264.     Vanguard's contributory infringement of the '358 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '358 patent.

265.     Vanguard's contributory infringement of the '358 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

266.    Vanguard's contributory infringement of the '358 patent is willful infringement because its activities continue despite an objectively high likelihood that the conduct infringes valid claims of the '358 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct constituted contributory infringement of valid claims of the '358 patent.

## COUNT 18

## Eighteenth Cause of Action: Inducement Infringement of U.S. Patent No. 10,043,358

267.    InVue incorporates by reference the allegations of paragraphs 1 through 42 and 240 through 253 as if fully set forth herein.

268.    On information and belief, Vanguard has had actual knowledge of the '358 patent since it was published on July 26, 2018 because the application that resulted in the '358 patent and its file history in the United States Patent and Trademark Office (USPTO) were publicly available on the USPTO's Public Application Information Retrieval website beginning on that date, and the Issue Notification attached as Exhibit J, was publicly available on July 26, 2018. Upon information and belief, because the application that led to the '358 patent was a continuation of the applications that led to the '765 and '564 patents, which were disclosed to Vanguard (*see* paragraphs 170-171, 212), Vanguard would have monitored the prosecution of the application that resulted in the '358 patent and been aware of its issuance on August 7, 2018.

269.    Vanguard sells and continues to sell the Accused Products to its customers with the intent that its customers will use and operate the Accused Products in the United States in a manner that infringes the '358 patent.

270.    Vanguard provides its customers with instructions regarding the infringing use and operation of the Accused Products in the United States, for example through instructional

videos on its website providing detailed instructions on installation and reprogramming of the Accused Products. *See, e.g.*, https://www.vanguardprotexglobal.com/9133-2/ (last visited October 15, 2018).

271.    Upon information and belief, Vanguard trains its customers in the infringing use and operation of the Accused Products in the United States.

272.    Upon information and belief, Vanguard has observed its customers using and operating the Accused Products in the United States in an infringing manner.

273.    Upon information and belief, Vanguard is aware or should have known that use and operation of the Accused Products in the United States by Vanguard or its customers would directly infringe the '358 patent.

274.    Vanguard's actions to aid and abet its customers to directly infringe the '358 patent with knowledge that use of the Accused Products in the United States would directly infringe the '358 patent constitutes inducement infringement.

275.    Vanguard's inducement infringement of the '358 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

276.    Vanguard's inducement infringement of the '358 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '564 patent.

277.    Vanguard's inducement infringement of the '358 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

278.     Vanguard's inducement infringement of the '358 patent is willful infringement because these activities continue despite an objectively high likelihood that the conduct infringes valid claims of the '358 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct induces infringement of valid claims of the '358 patent.

## COUNT 19

### Nineteenth Cause of Action: Direct Infringement of U.S. Patent No. 9,972,178

279.     InVue incorporates by reference the allegations of the paragraphs 1 through 42 as if fully set forth herein.

280.     Vanguard's manufacture, offer for sale, sale, importation, and/or use of the Accused Products in the United States directly infringes the '178 patent.

281.     Vanguard's manufacture, offer for sale, sale, importation, and/or use of the Accused Products infringes, for example, at least claim 1 of the '178 patent.

282.     The Accused Products, for example, are merchandise security systems for displaying and protecting an article of merchandise.  Such systems include a sensor that is configured for attachment to the article of merchandize to detect removal of the merchandise from the sensor.  The sensor has an upper portion and a lower portion.

283.     The system includes a power cable having a connector that can operably engage an input port of an article of merchandise to provide power to the article of merchandise.  The lower portion includes a recess that is configured to receive the end of a power cable opposite the connector.   The upper portion is configured to receive one or more retaining arms for engaging the article of merchandise.  The upper portion is configured to attach to the article of merchandise and the lower portion such that the upper portion is located between the lower

portion and the article of merchandise and the end of the power cable is disposed between the upper portion and the lower portion.

284. A base (sometimes referred to by Vanguard as a "pedestal") is configured to removably support the sensor such that the sensor is removable from the pedestal and is positionable on the pedestal. A tether (sometimes referred to by Vanguard as a "cord reel tether") includes a connector at one end that is configured to releasably connect to the sensor. The pedestal is configured to receive an opposite end of the tether.

285. Vanguard's direct infringement of the '178 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

286. Vanguard's direct infringement of the '178 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '178 patent.

287. Vanguard's direct infringement of the '178 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

288. Vanguard has had actual knowledge of the '178 patent since at least April 27, 2018, when InVue notified Vanguard of the patent.

289. Upon information and belief, Vanguard would have monitored the prosecution of the application that resulted in the '178 patent and been aware of its issuance on May 15, 2018.

290. Vanguard's direct infringement of the '178 patent constitutes willful infringement because the infringement continues despite an objectively high likelihood that Vanguard's conduct infringes valid claims of the '178 patent, and this likelihood is either known to Vanguard

or so obvious that Vanguard should have known that its conduct infringed valid claims of the

'178 patent.

## COUNT 20

### Twentieth Cause of Action: Contributory Infringement of U.S. Patent No. 9,972,178

291.    InVue incorporates by reference the allegations of paragraphs 1 through 42 and

279 through 290 as if fully set forth herein.

292.    Vanguard has had actual knowledge of the '178 patent since at least April 27,

2018, when InVue notified Vanguard of the patent.

293.    Upon information and belief, Vanguard would have monitored the prosecution of

the application that resulted in the '178 patent and been aware of its issuance on May 15, 2018.

294.    The Accused Products are configured only for infringing use to display and

protect an article of merchandise.  Such include a sensor that is configured for attachment to the

article of merchandize to detect removal of the merchandise from the sensor.  The sensor has an

upper portion and a lower portion. The system includes a power cable having a connector that

can operably engage an input port of an article of merchandise to provide power to the article of

merchandise.  The lower portion includes a recess that is configured to receive the end of a

power cable opposite the connector.  The upper portion is configured to receive one or more

retaining arms for engaging the article of merchandise.  The upper portion is configured to attach

to the article of merchandise and the lower portion such that the upper portion is located between

the lower portion and the article of merchandise and the end of the power cable is disposed

between the upper portion and the lower portion.  A base (sometimes referred to by Vanguard as

a "pedestal") is configured to removably support the sensor such that the sensor is removable

from the pedestal and is positionable on the pedestal.  A tether (sometimes referred to by

49

Vanguard as a "cord reel tether") includes a connector at one end that is configured to releasably connect to the sensor.  The pedestal is configured to receive an opposite end of the tether.

295.    The Accused Products are not staple articles of commerce.

296.    The Accused Products are not suitable for substantial non-infringing use.

297.    The Accused Products are especially made or especially adapted for use in an infringement of the '178 patent.

298.    The use of the Accused Products by Vanguard's customers constitutes direct infringement of the '178 patent.

299.    On information and belief, Vanguard knows that the Accused Products are not staple articles of commerce, are not suitable for substantial non-infringing use, and are especially made or adapted for use in a manner that infringes InVue's patent rights associated with the '178 patent.

300.    Vanguard's actions constitute contributory infringement of the '178 patent.

301.    Vanguard's contributory infringement of the '178 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

302.    Vanguard's contributory infringement of the '178 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '358 patent.

303.    Vanguard's contributory infringement of the '178 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

304.     Vanguard's contributory infringement of the '178 patent is willful infringement because its activities continue despite an objectively high likelihood that the conduct infringes valid claims of the '178 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct constituted contributory infringement of valid claims of the '178 patent.

## COUNT 21

### Twenty-First Cause of Action: Inducement Infringement of U.S. Patent No. 9,972,178

305.     InVue incorporates by reference the allegations of paragraphs 1 through 42 and 279 through 290 as if fully set forth herein.

306.     Vanguard has had actual knowledge of the '178 patent since at least April 27, 2018, when InVue notified Vanguard of the patent.

307.     Upon information and belief, Vanguard would have monitored the prosecution of the application that resulted in the '178 patent and been aware of its issuance on May 15, 2018.

308.     Vanguard sells and continues to sell the Accused Products to its customers with the intent that its customers will use and operate the Accused Products in the United States in a manner that infringes the '358 patent.

309.     Vanguard provides its customers with instructions regarding the infringing use and operation of the Accused Products in the United States, for example through instructional videos on its website providing detailed instructions on installation and reprogramming of the Accused Products.  *See, e.g.*, https://www.vanguardprotexglobal.com/9133-2/ (last visited October 15, 2018).

310.     Upon information and belief, Vanguard trains its customers in the infringing use and operation of the Accused Products in the United States.

311.    Upon information and belief, Vanguard has observed its customers using and operating the Accused Products in the United States in an infringing manner.

312.    Upon information and belief, Vanguard is aware or should have known that use and operation of the Accused Products in the United States by Vanguard or its customers would directly infringe the '178 patent.

313.    Vanguard's actions to aid and abet its customers to directly infringe the '178 patent with knowledge that use of the Accused Products in the United States would directly infringe the '178 patent constitutes inducement infringement.

314.    Vanguard's inducement infringement of the '178 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

315.    Vanguard's inducement infringement of the '178 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '178 patent.

316.    Vanguard's inducement infringement of the '178 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

317.    Vanguard's inducement infringement of the '178 patent is willful infringement because these activities continue despite an objectively high likelihood that the conduct infringes valid claims of the '178 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct induces infringement of valid claims of the '178 patent.

## COUNT 22

### Twenty-Second Cause of Action: Direct Infringement of U.S. Patent No. 10,008,082

318.    InVue incorporates by reference the allegations of the paragraphs one through 42 as if fully set forth herein.

319.    Vanguard's manufacture, offer for sale, sale, importation, and/or use of the Accused Products in the United States directly infringes the '082 patent.

320.    Vanguard's manufacture, offer for sale, sale, importation, and/or use of the Accused Products infringes, for example, at least claim 1 of the '082 patent.

321.    One or more of the Accused Products, for example, is a security system for securing from theft or unauthorized removal an item of merchandise, such as a phone, tablet, camera, or the like.

322.    The security system of the Accused Products includes a base (sometimes referred to by Vanguard as a "pedestal") upon which an item of merchandise may rest and, when desired, be removed from the base assembly.  The base consists of several elements, including a sidewall and a bottom surface, with the sidewall having a defined opening.

323.    When a security event occurs, such as the cutting of the tether or unauthorized removal of the item of merchandise, an audible alarm is triggered in response.

324.    The alarm includes a sound chamber made up of at least a cap coupled to a chamber and an opening defined in the chamber for allowing sound to exit the chamber.

325.    The cap is disposed at an angle relative to the bottom surface of the chamber and is designed to resonate for generating sound and directing the sound towards the bottom surface of the chamber.  Additionally, the sound chamber is designed to direct sound generated by the sound chamber out of the opening of the chamber and towards the opening of the sidewall.  The chamber is further designed to direct the sound generated by the sound chamber in a direction

towards the opening in the chamber that is different than the direction that the sound is directed by the cap.

326.     Vanguard's direct infringement of the '082 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

327.     Vanguard's direct infringement of the '082 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '082 patent.

328.     Vanguard's direct infringement of the '082 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

329.     Vanguard has had actual notice of the '289 publication related to the '082 patent since at least April 2, 2018.

330.     Upon information and belief, Vanguard would have monitored the prosecution of the application that resulted in the '082 patent and been aware of its issuance on June 26, 2018.

331.     Vanguard's direct infringement of the '082 patent constitutes willful infringement because the infringement continues despite an objectively high likelihood that Vanguard's conduct infringes valid claims of the '082 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct infringed valid claims of the '082 patent.

## COUNT 23

### Twenty-Third Cause of Action: Contributory Infringement of U.S. Patent No. 10,008,082

332.    InVue incorporates by reference the allegations of paragraphs 1 through 42 and 318 through 331 as if fully set forth herein.

333.    Vanguard has had actual notice of the '289 publication related to the '082 patent since at least April 2, 2018.

334.    Upon information and belief, Vanguard would have monitored the prosecution of the application that resulted in the '082 patent and been aware of its issuance on June 26, 2018.

335.    The Accused Products are configured only for infringing use as a security system for securing at item of merchandise from theft or unauthorized removal.  The Accused Products include a base (or "pedestal") for removably supporting an item of merchandise, where the base includes a sidewall with a defined opening and a bottom surface.  The Accused Products also include an alarm that sounds when a security event occurs.  The alarm includes a sound chamber comprising a cap coupled to a chamber and an opening defined in the chamber for allowing sound to exit the chamber.  The cap is angled with respect to the chamber such that cap resonates to generate sound and directs it towards the bottom surface of the chamber.  Additionally, the sound chamber is designed to direct sound generated by the sound chamber out of the opening of the chamber and towards the opening of the sidewall.  The chamber is further designed to direct the sound generated by the sound chamber in a direction towards the opening in the chamber that is different than the direction that the sound is directed by the cap.

336.    The Accused Products are not staple articles of commerce.

337.    The Accused Products are not suitable for substantial non-infringing use.

338.     The Accused Products are especially made or especially adapted for use in an infringement of the '082 patent.

339.     The use of the Accused Products by Vanguard's customers constitutes direct infringement of the '082 patent.

340.     On information and belief, Vanguard knows that the Accused Products are not staple articles of commerce, are not suitable for substantial non-infringing use, and are especially made or adapted for use in a manner that infringes InVue's patent rights associated with the '082 patent.

341.     Vanguard's actions constitute contributory infringement of the '082 patent.

342.     Vanguard's contributory infringement of the '082 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

343.     Vanguard's contributory infringement of the '082 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '082 patent.

344.     Vanguard's contributory infringement of the '082 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

345.     Vanguard's contributory infringement of the '082 patent is willful infringement because its activities continue despite an objectively high likelihood that the conduct infringes valid claims of the '082 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct constituted contributory infringement of valid claims of the '082 patent.

## COUNT 24

### Twenty-Fourth Cause of Action: Inducement Infringement of U.S. Patent No. 10,008,082

346.    InVue incorporates by reference the allegations of paragraphs 1 through 42 and 318 through 331 as if fully set forth herein.

347.    Vanguard has had actual notice of the '289 publication related to the '082 patent since at least April 2, 2018.

348.    Upon information and belief, Vanguard would have monitored the prosecution of the application that resulted in the '082 patent and been aware of its issuance on June 26, 2018.

349.    Vanguard sells and continues to sell the Accused Products to its customers with the intent that its customers will use and operate the Accused Products in the United States in a manner that infringes the '082 patent.

350.    Vanguard provides its customers with instructions regarding the infringing use and operation of the Accused Products in the United States, for example through instructional videos on its website providing detailed instructions on installation and reprogramming of the Accused Products.  *See, e.g.*, https://www.vanguardprotexglobal.com/9133-2/ (last visited October 15, 2018).

351.    Upon information and belief, Vanguard trains its customers in the infringing use and operation of the Accused Products in the United States.

352.    Upon information and belief, Vanguard has observed its customers using and operating the Accused Products in the United States in an infringing manner.

353.    Upon information and belief, Vanguard is aware or should have known that use and operation of the Accused Products in the United States by Vanguard or its customers would directly infringe the '082 patent.

354.     Vanguard's actions to aid and abet its customers to directly infringe the '082 patent with knowledge that use of the Accused Products in the United States would directly infringe the '082 patent constitutes inducement infringement.

355.     Vanguard's inducement infringement of the '082 patent causes financial damages to InVue, including for example, lost sales revenue caused by Vanguard's sales of the Accused Products.

356.     Vanguard's inducement infringement of the '082 patent irreparably damages InVue, including for example, preventing InVue from exercising its right to exclude others from making, using, selling, offering to sell, or importing products embodying the invention patented in the '082 patent.

357.     Vanguard's inducement infringement of the '082 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

358.     Vanguard's inducement infringement of the '082 patent is willful infringement because these activities continue despite an objectively high likelihood that the conduct infringes valid claims of the '082 patent, and this likelihood is either known to Vanguard or so obvious that Vanguard should have known that its conduct induces infringement of valid claims of the '082 patent.

## COUNT 25

### Twenty-Fifth Cause of Action: Liability for Pre-Issuance Damages

359.     InVue incorporates by reference the allegations of paragraphs 1 through 42 as if fully set forth herein.

360.     The application that resulted in the '178 patent published on November 16, 2017 as the '432 publication.

361.    One or more claims, including claim 1, of the '432 publication are substantially identical to one or more claims of the '178 patent, including claim 1 of the '178 patent.

362.    InVue disclosed the '432 publication to Vanguard on April 2, 2018.  Thus Vanguard had actual notice of the '432 publication after its publication and prior to issuance.

363.    On information and belief, prior to the issuance of the '178 patent, Vanguard, made used, offered for sale, and/or sold into the United States and/or imported into the United States the Accused Products and thus the invention as claimed in the '432 publication, including but not limited to claim 1 of the '432 publication.

364.    On information and belief, Vanguard gained profits by virtue of its manufacture, sales, offers for sale, uses, and importations of the Accused Products subsequent to publication of the '432 publication and prior to the issuance of the '178 patent.

365.    InVue sustained damages as a direct and proximate result of Vanguard's manufacture, sales, offers for sale, uses, and importations of the Accused Products subsequent to the publication of the '432 publication and prior to issuance of the '178 patent.

366.    InVue is entitled to a reasonably royalty for Vanguard's manufactures, sales, offers for sale, uses, and importations of the Accused Products subsequent to the publication of the '432 publication and prior to issuance of the '178 patent pursuant to 35 U.S.C. § 154(d).

## Request for Relief

Wherefore, InVue respectfully requests the entry of judgment against Defendant Vanguard and its subsidiaries, successors, parents, affiliates, officers, directors, agents, servants, employees, and all persons in active concert or participation, providing the following relief:

A.    Finding that Defendant Vanguard has directly infringed, either literally or by doctrine of equivalents, has committed contributory infringement, and/or has committed

inducement infringement of one or more claims of the patents-in-suit and finding that such infringement has been willful;

B.       Entering a permanent injunction, under 35 U.S.C. § 283 and the equitable powers of the Court, against Defendant Vanguard and all those in active concert or participation with Defendant Vanguard, to prevent further direct and/or indirect infringement of the patents-in-suit;

C.       Awarding Plaintiff InVue damages in an amount that will be proved at trial and that will adequately compensate Plaintiff InVue for the infringement but in no amount less than a reasonable royalty as authorized by 35 U.S.C. § 284;

D.       Increasing the damages awarded to Plaintiff InVue up to three times the amount of Plaintiff's actual damages as authorized by 35 U.S.C. § 284;

E.       Finding that this is an exceptional case and award Plaintiff InVue its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285 and/or other applicable laws;

F.       A judgment awarding InVue a reasonably royalty for Vanguard's manufacture, sales, offers for sale, uses, and importations of the Accused Products subsequent to the publication of the '432 publication and prior to issuance of the '178 patent pursuant to 35 U.S.C. § 154(d);

G,       Awarding Plaintiff InVue prejudgment interest and costs under 35 U.S.C. § 284 and/or other applicable laws;

H       Granting such other legal and equitable relief and the Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues triable to a jury.

This the 16th day of October, 2016.          Respectfully submitted,

MATULIS LAW & MEDIATION
By: /s/ *James M. Matulis*
James M. Matulis
Florida Bar No. 0077429
9806 Gretna Green Drive, St. 100
Tampa, FL 33626
Phone: (813) 451-7347
Jim@Matulis-Law.com

Tim F. Williams (pro hac forthcoming)
Dority & Manning, P.A.
P. O. Box 1449
Greenville, SC 29602-1449
(864) 271-1592
(864) 233-7342 (facsimile)
timw@dority-manning.com

***Attorneys for Plaintiff***
***InVue Security Products Inc.***