**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

InVue Security Products Inc.,

      Plaintiff,

      v.

Vanguard Products Group, Inc., d/b/a
Vanguard Protex Global,

      Defendant.

# EXHIBIT 8

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| InVue Security Products Inc., | |
| Plaintiff, | |
| v. | Civil Case No.: 8:18-cv-02548-VMC-SPF |
| Vanguard Products Group, Inc., d/b/a Vanguard Protex Global, | |
| Defendant. | |

## DEFENDANT'S PRELIMINARY INVALIDITY CONTENTIONS

Defendant, Vanguard Products Group, Inc. ("Defendant") hereby submits its Preliminary Invalidity Contentions ("Invalidity Contentions") in response to the Disclosure of Asserted Claim and Preliminary Infringement Contentions ("Infringement Contentions") Plaintiff, InVue Security Products, Inc. ("Plaintiff") delivered on January 10, 2019.  In those contentions, Plaintiff alleged infringement of the following eight patents:

- U.S. Patent No. 9,747,765: claims 1, 2, 16, 18, 19, and 23 (Ex. 1);

- U.S. Patent No. 9,805,564: claims 1-4, 8, 9, 11, and 28 (Ex. 2);

- U.S. Patent No. 9,818,274: claims 1, 4, 9-11, 14, 19, 20, 22-25, 30, 31, 33-36, and 38-39 (Exs. 3-4);

- U.S. Patent No. 9,972,178: claims 1, 4, 6, 8, and 16 (Exs. 5-6);

- U.S. Patent No. 10,008,082: claims 1, 3, 6, and 18 (Ex. 7);

- U.S. Patent No. 10,043,358: claims 1-3, 17, 18, 28, and 29 (Ex. 8);

- U.S. Patent No. 10,062,253: claims 1, 4, 9, 13, 16-18, 27, 28, 30, and 32 (Exs. 9-10); and

- U.S. Patent No. 10,098,481: claims 52-61, 63-70, and 73 (Exs. 11-12).

Defendant reserves the right to object to or otherwise oppose any attempt by Plaintiff to improperly amend or supplement its Infringement Contentions to allege infringement of any additional claims.

The two main patents asserted by Plaintiff are U.S. Patent Nos. 9,818,274 ("the '274 Patent") and 10,062,253 ("the '253 Patent"), both of which disclose and claim a security system that uses optical communication between two optical transceivers to determine whether a tether cable connecting an article of merchandise to a base has been cut or disconnected.  Invalidity Contentions establish that claims 1, 4, 9-11, 14, 19, 20, 22-25, 30, 31, 33-36, and 38-39 of the '274 Patent and claims 1, 4, 9, 13, 16-18, 27, 28, 30, and 32 of the '253 Patents (collectively "the Asserted Claims") are invalid because they are rendered obvious under 35 U.S.C. § 103. For strategic reasons, Invalidity Contentions only address invalidity of the '274 and the '253 Patents. Omission of the other six asserted patents should not be construed as Defendant's concession that these patents are valid. Defendant reserves the right to seek invalidation of any and all Asserted Claims through any process provided by law, including, but not limited to, Post Grant Review and *Inter Partes* Review.

These Invalidity Contentions reflect Defendant's knowledge, thinking, and contentions concerning the invalidity of the '274 and the '253 Patents as of the date of service hereof. Invalidity Contentions are based upon knowledge, information, or belief presently available to Defendant.  Discovery and Defendant's search for prior art are ongoing. At this stage of litigation, Defendant has received only limited documents from Plaintiff and has not received documents from or engaged in any discovery related to third-parties.  Plaintiff and Defendant have not yet exchanged proposed claim constructions or submitted claim construction briefs to the Court, and

the Court has not issued a claim construction ruling. Expert discovery has not yet commenced. Defendant's positions in Invalidity Contentions should not be construed as any concession by Defendant with respect to infringement.

Invalidity Contentions address only the Asserted Claims of the '274 and the '253 Patents. If, during the course of this litigation, the Court grants Plaintiff permission to assert infringement of any additional claims of the '274 and the '253 Patents, Defendant reserves the right to disclose additional or revised Invalidity Contentions regarding the Asserted Claims or any such additional claims.

Defendant further reserves the right to modify and supplement, without prejudice, its Invalidity Contentions in response to: the identification of additional prior art or other relevant information during the course of discovery or in response to any findings as to the priority dates of the Asserted Claims; the Court's construction of any claim term; positions otherwise taken by Plaintiff or its expert witnesses concerning claim construction, infringement, equivalents, or invalidity issues; any amendment by Plaintiff of its Infringement Contentions or the Complaint; or any amendment of Defendant's Answer and/or counterclaims, or otherwise in accordance with the Federal Rules of Civil Procedure or other applicable rules and statutes or orders of the Court.

## I. OVERVIEW OF THE '274 AND THE '253 PATENTS

Independent claim 1 of the '274 Patent is illustrative of the Asserted Claims. Claim 1 of the '274 Patent is reproduced below:

> 1. A security system for securing an item of merchandise, comprising:
>
> > a sensor configured to be coupled to the item of merchandise,
>
> wherein the sensor comprises an optical transceiver;

a charging circuit for providing power to the sensor and/or the item

of merchandise; and

a cable configured to be connected to the sensor, wherein the cable

comprises an optical transceiver,

wherein the optical transceiver of the cable and the optical

transceiver of the sensor are configured to communicate optical signals with

one another to determine if the cable has been cut or disconnected.

'274 Patent at 10:51-63.

Claim 1 of the '274 Patent recites a security device for securing an article of merchandise. Claim 1 requires that the security device must have a sensor configured to be coupled to the article of merchandise and a cable configured to be connected to the sensor. The claimed security device must also have a charging circuit for providing power to the sensor and/or item of merchandise. Finally, the sensor and the cable must each be equipped with an optical transceiver. These optical transceivers communicate optical signals with one another to determine whether the cable has been cut or disconnected. As set forth herein, this illustrative claim is invalid under 35 U.S.C. § 103.

Asserted dependent claims recite well-known technologies pertaining to various trivial aspects of the security system, including the following: joints for coupling the cable to the sensor; the means of powering the optical transceivers; placing electrical conductors within the cable to establish a "sense loop;" disposing alarms within the sensor and the base; using a wireless key to disarm the alarm; and connecting the charging port of the article of merchandise to the sensor and monitoring that connection. As the analysis provided below and the attached claim charts establish, every limitation recited in the asserted dependent claims has been known prior to the

'274 and the '253 Patents, and it would have been obvious to include those limitations into the cited prior art security systems.

## II. PRIOR ART INVALIDATING THE ASSERTED CLAIMS OF THE '274 AND '253 PATENTS

The table provided below identifies the U.S. patents and published patent applications in view of which the Asserted Claims of the '274 Patent and the '253 Patent are obvious.  Some of the listed patents may incorporate other patents and publications by reference and are intended to be representative of those other patents or publications. Defendant reserves the right to modify, amend, or supplement these Invalidity Contentions with any such related patents and publication, as well as other prior art which may become known to Defendant upon further investigation.

**Table 1 – Prior Art**

| Patent/Publication Number | Title | Filing Date | Issue/Publication Date |
|---|---|---|---|
| US 8,698,618 (Henson) | Display for Hand-Held Electronics | Sep. 22, 2010 | Apr. 15, 2014 |
| US 5,912,619 (Vogt) | Security System Using Optical Sensors | Dec. 31, 1997 | Jun. 15, 1999 |
| US 2011/0254661 (Fawcett) | Programmable Security System and Method for Protecting Merchandise | Jun. 27, 2011 | Oct. 20, 2011 |
| US 8,696,377 (Kelsch) | Communication Connector with Analog Coupling Circuit | Jun. 25, 2013 | Apr. 15, 2014 |
| US 8,909,008 (Tzeng) | Active Optical Rotary Coupler | Mar. 26, 2012 | Dec. 9, 2014 |

| US 6,648,520 (McDonald) | Fiber Optic Plug | Sep. 28, 2001 | Nov. 18, 2003 |
| US 2006/0049587 (Cornwell) | Tool Connector | Sep. 9, 2004 | Mar. 9, 2006 |
| US 2011/0013905 (Wang) | Active Optical Cable Apparatus and Method for Detecting Optical Fiber Breakage | Jul. 17, 2009 | Jan. 20, 2011 |

A.  **Overview of the Prior Art**

1.  U.S. Pat. No. 8,698,618 ("Henson")

The U.S. Pat. No. 8,698,618 ("Henson") issued on April 15, 2014 and, therefore, qualifies as prior art against the '274 and '253 Patents.  Henson discloses a tethered display system for showcasing and protecting article of merchandises.  A sensor ("puck") is affixed to a rear surface of the article of merchandise and is configured to detect and communicate a security breach event. *See* Henson at 9:24-32.  A base is disposed within the display counter, wherein the base has an aperture configured to accept the puck. *Id*. at 9:1-7; FIG. 1.  The puck is tethered to the base via a retractable cable, such that the article of merchandise can be lifted from the base, but only by a distance permitted by the length of the cable. *Id*. at 4:49-63; FIG. 1.  The puck and the base have complementary electric connectors, such that when the puck is resting on the base, power is supplied from the base to the puck. *Id*. at 6:29-38.  The puck is equipped with its own battery configured to power circuitry and security sensors within the puck. *Id.* 12:20-23.  The puck has an adapter cable that connects to and charges the battery within the article of merchandise.  *Id*. 11:60-65.  The puck is configured to trigger an alarm in response to a security breach event, including "cutting of the mechanical retractor cable."  *Id*. at 14:1-3.  The puck is equipped with a "light ring,"

which functions as a visual alarm, and the base is equipped with an "alarm module." *Id.* at 15:8-

11; 13:57-60; FIG. 22.

FIGS. 1, 20, and 22 of Henson are reproduced and annotated below:



**Article of merchandise**

**Sensor**

**Tether cable**

**Base**

**Fig. 1**



Article of merchandise coupled to the sensor.

Adapter cable for charging the battery of the hand-held electronic.

The sensor.

The sensor has its own batter which charges when the sensor rests on the base.

Power source located under the counter.

**Fig. 20**



Article of merchandise

Sensor

Visual alarm (light ring) within the sensor

Alarm module within the base

**Fig. 22**

### 2.   U.S. Pat. No. 5,912,619 ("Vogt")

U.S. Pat. No. 5,912,619 ("Vogt"), which issued on June 15, 1999 discloses a security device that uses two optical transceivers that communicate optical signals to one another.  *See* Vogt at Abstract.  In one embodiment, depicted in FIG. 9B which is reproduced and annotated below, Vogt teaches or suggests that this technology can be used to determine whether a cable has been cut or disconnected. *Id.* at FIG. 9B.

9



FIG.9B

Vogt discloses that unit 20 comprises a first optical transducer 24, which is configured to transmit an optical signal, and a second optical transducer 28, which is configured to receive an optical signal. *Id*. at Abstract; 4:33-39; FIG. 4. Vogt discloses that unit 21 is also equipped with an optical transducer 34 configured to receive an optical signal and an optical transducer 35 configured to transmit an optical signal. *Id*. at Abstract; 5:41-55; FIG. 4. Thus, Vogt discloses that unit 20 comprises a first optical transceiver and unit 21 comprises a second optical transceiver.[1] Vogt further discloses that the optical transceivers of units 20 and 21 exchange

---

[1] At the time of the priority date of the '274 and the '253 Patents, it was well understood in the art that a transceiver is a unit includes both an optical transmitter and an optical receiver. *See, e.g.*, Fiber Optic Association, Inc. ("FOA"), Guide to Fiber Optics & Premises Cabling, (available at https://web.archive.org/web/20101128202806/http://thefoa.org/tech/ref/appln/transceiver.html).

optical signals, and that an alarm is triggered if the optical transceiver within unit 20 fails to receive a predefined optical response signal from the optical transceiver within unit 21. *Id.* at Abstract. Vogt discloses that the first and second optical transceivers are configured to transmit data and information between one another. Vogt at 3:19-26. Furthermore, Vogt discloses that the two transceivers are powered by independent power sources and electrically isolated from one another. *Id*. at 6:42-43, FIGS. 3 and 4.

FIGS. 3 and 4 of Vogt are reproduced and annotated below:





The first and second optical transceivers exchange optical signals to ensure that they are both powered ON and within close proximity to one another.

First optical transceiver

Second optical transceiver

Electrical connector for powering detector 36, which is necessary for the second transceiver to send a correct optical response signal.

FIG. 3

### 3.   U.S. Pub. No. 2011/0254661 (Fawcett)

US Pub. No. 2011/0254661 (Fawcett) was published on October 20, 2011 and, therefore, is prior art against the '274 and the '253 Patents. Fawcett discloses an anti-theft security system for protecting an article of merchandise. Fawcett at Abstract. Specifically, Fawcett discloses an alarm module 7 that is configured to be mounted to a support surface, such as a retail display counter. *See id.* at [0059]; FIG. 6. A tether cable 11 secures an article of merchandise 9 to the alarm module 7. *Id.* at [0053]; FIG. 1. Tether cable 11 has electrical conductors 13 disposed therein, which define a "sense loop." *Id.* at [0060]; FIG. 1. Alarm module 7 includes a visual alarm 61 and an audio alarm 51. *Id.* at [0059]; FIG. 7. If the tether cable 11 is cut or disconnected,

the "sense loop" will be interrupted, which will trigger an alarm. *Id.* at [0060].  The alarm can be armed and disarmed using a wireless key 5. *Id.* at [0069]; FIG. 1.

FIGS. 1, 6, and 7 of Fawcett are reproduced and annotated below:





Alarm module (base)

Audio alarm

Visual alarm

Support structure

**FIG-6**

Electrical conductor inside the tether cable

Visual alarm

Audio alarm

Circuit for disarming the alarm using a wireless key

**FIG-7**

14

### 4. U.S. Pat. No. 8,696,377 (Kelsch)

U.S. Pat. No. 8,696,377 (Kelsch) issued on April 15, 2014 and, therefore, is prior art against the '274 and the '253 Patents. Kelsch discloses a male plug configured to couple to the female charging port of a hand-held electronic. Kelsch 2:3-9. Two electrical conductors extend from the male plug and are configured to connect to an alarm module. *Id*. at FIG. 1. When the plug resides within the female charging port a closed electrical circuit is formed between the two electrical conductors. *Id.* at Abstract. If the male plug is removed from the charging port or the cable in which the electrical conductors are disposed, an alarm will be triggered. *Id*. Thus, the device disclosed in Kelsch is an effective means for monitoring connection between an alarm module and the charging port of the hand-held electronic.

### 5. U.S. Pat. No. 8,909,008 (Tzeng)

U.S. Pat. No. 8,909,008 (Tzeng) issued on December 9, 2014 and, therefore, is prior art against the '274 and the '253 Patents. Tzeng discloses an optical rotary coupler that enables the two connecting optical components to rotate with respect to one another. Tzeng at Abstract. The rotary coupler prevents the connected cables from becoming twisted because the cables can rotate with respect to one another. Tzeng at 1:18-21. The optical rotary coupler provides an air gap between the two optical components mated by the coupler to prevent damage of the optical components during operation. *Id*. at 7:61-66.

### 6. U.S. Pat. No. 6,648,520 (McDonald)

U.S. Pat. No. 6,648,520 (McDonald) issued on November 18, 2003 and, therefore, is prior art against the '274 and the '253 Patents. McDonald discloses a fiber optic plug configured to provide a secure coupled connection between a cable having an optical component and a corresponding female receptacle, also having an optical component. McDonald at Abstract.

McDonald discloses that the plug is configured to threadably couple to the female receptacle. *Id.* at 13:66—14:1. The plug also contains a threaded collar. *Id.* at 13:46-49.



FIG. 1.

### III. INVALIDITY UNDER 35 U.S.C. § 103

The Asserted Claims of the '274 and '253 Patents are invalid under 35 U.S.C. § 103 because all limitations disclosed in those claims have been well-known in the art prior to the earliest priority date of these patents.

   A.  Claims 1, 4, 9, 34-36, and 38-39 of the '274 Patent and claims 1, 4, 28, 30, and 32 of the '253 Patent are obvious over Henson in view of Vogt

Henson discloses all limitations of independent claims 1 and 39 of the '274 Patent and independent claim 1 of the '253 Patent, except for optical transceivers disposed within the sensor and the cable configured to exchange optical signals with one another for determining whether the

cable has been cut or disconnected.  However, this technology has been well-known in the art long before the '274 and the 253 Patents were filed.

Henson discloses an objective of triggering an alarm responsive to the cable connecting the sensor to the base being cut.  *See* Henson at 15:8-17.  To achieve this objective, it would have been obvious for a person of ordinary skill in the art ("POSA") to improve the security device disclosed in Henson by including the security system using two optical transceivers disclosed in Vogt.  It would have been obvious to dispose unit 20 of Vogt, which includes a first optical transceiver, within puck 14 of Henson.  The battery disposed within puck 14 would be used to power the optical transceiver and other circuitry of unit 20 of Vogt.  It also would have been obvious to dispose unit 21 of Vogt, which includes a second optical transceiver, at the end of cable 28 of Henson, as taught in FIG. 9B of Vogt.  It would also have been obvious to run electrical connector 37 of Vogt that is needed to power signal detector/generator 36 of unit 21 within cable 28 of Henson.  Such modification would have been straightforward, would not require undue experimentation, and would produce predictable results.

In the resulting improved security system, the first optical transceiver within the sensor would exchange optical signals with the second optical receiver within the cable, which is connected to the sensor.  Removal of the cable from the sensor would cause the optical signal exchange between the two optical transceivers to fail, thereby triggering an alarm.  Cutting of the cable would de-energize signal detector/generator, which would render the second optical transceiver unable to transmit a correct response signal to the first optical transceiver, thereby triggering an alarm.  Thus, Henson in view of Vogt renders obvious independent claims 1 and 39 of the '274 Patent and independent claim 1 of the '253 Patent.

Dependent claims 4, 9, 34-36, and 38-39 of the '274 Patent and dependent claims 4, 28, 30, and 32 of the '253 Patent recite limitations that have been well-known in the art prior to the priority date of the '274 and the '253 Patents.  Each of these claims either taught or suggested by Henson in view of Vogt.  For a more detailed analysis regarding obviousness of these dependent claims, see the attached claim charts.

Claims 4 of the '274 and '253 Patent depend from claim 2, which requires that the base be configured to removably support the sensor.  Henson teaches this limitation.  *See* Henson at 14:37-44. Claim 4 further requires that the sensor or the base must be configured to detect the presence or absence of data transmitted by optical transceivers and trigger an alarm responsive to the absence of data.  Vogt teaches these limitations.  *See* Vogt at Abstract; 11:4-10.

Claim 9 of the '274 Patent are configured to communicate with one another to determine whether the cable has been disconnected.  Vogt teaches this limitation.  *See* Vogt at Abstract ("Failure of the first unit to … receive the return signals … indicates … the units are no longer in close proximity.").

Claim 34 of the '274 Patent and claim 28 of the '253 Patent require that the optical transceiver be located at the end of the cable.  Placing an optical receiver of the cable at an end of the cable would have been an obvious design choice.  Furthermore, in FIG. 9B Vogt teaches placing optical transceivers at the ends of two mating cables.  Thus, it would have been obvious to place the optical transceiver of the cable at the end of the cable.

Claim 35 of the '274 Patent requires that the optical transceivers within the sensor and the cable must be electrically isolated from one another.  Vogt teaches that each optical transceiver is powered by its own separate power source.  Vogt at FIG. 4; 6:42-43.

Claim 36 of the '274 Patent and claim 30 of the '253 Patent introduce a limitation requiring that the optical transceiver within the sensor and the optical transceiver within the cable are configured to transmit data between one another.  This limitation is taught in Vogt.  *See* Vogt at 3:19-26.

Claim 38 of the '274 Patent and claim 32 of the '253 Patent introduce a limitation requiring a power source be disposed within the sensor configured to provide power to the sensor for interpreting signals provided by the optical transceiver and to provide power to the optical transceiver itself.  Vogt teaches these features.  FIG. 4 of Vogt depicts that the micro-processor and the optical transceiver of unit 20 are powered by power source 48, which is housed within unit 20. Vogt at FIG. 4; 6:26-31.  Henson discloses that puck comprises its own battery.  Henson at 6:56-58.  Thus, when combining Henson with Vogt, it would have been obvious to use the battery within the sensor of Henson as power source 48 required to power the micro-processor and the optical transceiver within unit 20 of Vogt.  Thus, claim 38 of the '274 Patent and claim 32 of the '253 Patent are obvious over Henson in view of Vogt.

B. <u>Claims 10, 19, and 30-33 of the '274 Patent and claims 9 and 27 of the '253 Patent are obvious over Henson in view of Vogt and further in view of Fawcett</u>

Claim 10 of the '274 Patent introduces the following additional limitation:  "the optical transceiver of the cable and the optical transceiver of the sensor are configured to communicate with one another to determine if the cable has been cut."  '274 Patent at 10:28-31.  US Pub. No. 2011/0254661 (Fawcett), which published on October 20, 2011, discloses a security system in which a tether cable is used to connect an article of merchandise to an alarm module mounted to a support surface.  Fawcett at [0059]–[0060].  Fawcett discloses that electrical conductors can be located within an outer mechanical tether cable.  *Id*. at [0023].  Faced with a challenge of figuring out how to connect power line 37 from the detector/generator 36 when combining

Henson with Vogt, a POSA would identify Fawcett as a source of a practical solution.  In light of Fawcett, it would have been obvious to run power line 37 of Vogt inside cable 28 of Henson. Such modification would have been straightforward, would not require undue experimentation, and would produce predictable results.

If the cable 28 were cut, the power line 37 would be severed.  As explained above and in the attached claim charts, the power line 37 supplies power to signal "detector/generator 36," which is an electrical component that is responsible for generating a correct response signal to be transmitted from the second optical transceiver within the cable to the first optical transceiver within the sensor.  *See* Vogt at 4:4-9.  Thus, if the tether cable within which power line 37 is disposed is cut, "detector/generator 36" will not receive any power and, therefore, will be unable to generate a correct return signal that must be sent back to the first optical transceiver.  Consequently, if cable 28 has been cut, the first optical transceiver will not receive the expected return signal.  Because "[f]ailure of the first unit to … receive the return signals … indicates … someone is trying to compromise the security system," the alarm will be triggered if the cable has been cut.  *See* Vogt at Abstract.  Therefore, claim 10 of the '274 Patent would have been obvious over Henson in view of Vogt and further in view of Fawcett.

Claim 19 of the '274 Patent introduces a limitation requiring that the cable comprise "at least one conductor for defining the sense loop, and wherein the at least one conductor does not transmit power to the sensor and/or item of merchandise."  As established above, Fawcett discloses that an electrical conductor defining a sense loop can be disposed within a mechanical tether cable.  Fawcett at [0023].  Henson discloses that cable 28 does not supply power to the sensor.  Henson at 12-45-52.  Thus, it would have been obvious to run power line needed to drive the "detector/generator" within the tether cable.  The power line, which is an electrical

connector, would define the sense loop because if the power line is severed, the optical signal exchange between the first and second optical transceivers will fail, as described above. Therefore, claim 19 is obvious over Henson in view of Vogt and further in view of Fawcett.

Claim 30 of the '274 Patent introduces a limitation requiring that "each of the sensor and the base comprises an alarm." Henson discloses a "light ring" within the sensor configured to output a visual alarm. Henson at 13:61-66. Henson also discloses that the base has an "alarm module" disposed therein. *Id.* at 12:43-46. Furthermore, Fawcett discloses that an audible and/or visual alarm can be disposed within the base. Fawcett at [0060]. Insofar as Henson does not teach or suggest an alarm disposed within the base, it would have been obvious to improve the security device disclosed in Henson, by providing an additional alarm within the base. A POSA would have been motivated to make this improvement to provide redundancy and enable a store employee to notice the alarm signal without requiring that the sensor is in the direct field of view. Thus, claim 30 of the '274 Patent is obvious over Henson in view of Vogt and further in view of Fawcett.

Claim 31 of the '274 Patent introduces an additional limitation requiring that "the at least one alarm is configured to be disarmed with a wireless key." Fawcett discloses using a wireless key to arm and disarm the alarm. Fawcett at [0069]. It would have obvious to combine Henson in view of Vogt with the wireless key technology disclosed in Fawcett. The motivation for making this combination is to achieve advantages of using a wireless key in this type of security systems as disclosed in paragraphs [0004] and [0005] of Fawcett. Thus, claim 31 of the '274 Patent is obvious over Henson in view of Vogt and further in view of Fawcett.

Claim 33 of the '274 Patent and claim 27 of the '253 Patent introduce an additional limitation requiring that "the cable comprises a plurality of electrical conductors for providing

21

power to the optical transceiver of the cable."  As explained above with respect to claim 10, it would have been obvious to dispose electrical conductors (power line 37 of Vogt) within cable 28 of Henson to provide power to the "detector/generator 36," which supplies an electrical signal to the second optical transceiver disposed within the cable (cable 28 of Henson).  Thus, claims 33 of the '274 Patent and claim 27 of the '253 Patent are obvious over Henson in view of Vogt and further in view of Fawcett for at least the same reasons as claim 10 of the '274 Patent.

C.  Claim 11 of the '274 Patent is obvious over Henson in view of Vogt and further in view of Kelsch

Claim 11 of the '274 Patent introduces a limitation requiring "a connector configured to electrically connect the sensor to the item of merchandise, wherein the optical transceiver of the cable and the optical transceiver of the sensor are configured to communicate with one another to determine if the connector has been removed from the item of merchandise."

Henson discloses an electrical connector connecting the sensor to the charging port of the hand-held.  Henson also discloses multiple redundant mechanisms for detecting whether the hand-held has been removed from the sensor:  "[d]isconnection of the secondary sensor cable 84 or release of the pressure button 96 will trigger a security signal that is transmitted in the manner described below."  Henson at 11:27-30.

US Pat. No. 8,696,377 (Kelsch), which issued on April 15, 2014 and, therefore, qualifies as prior art against the '274 Patent, and is analogous prior art with respect to the '274 Patent because it discloses a security system for safeguarding an article of merchandise against theft. Specifically, Kelsch discloses a security device for monitoring the connection between an electrical connector and the article of merchandise.  *See* Kelsch at Abstract.  The device of Kelsch is configured to replace a male plug on an adapter cable for charging an article of

merchandise.  The security device disclosed in Kelsch enables monitoring the integrity of connection between the alarm module, such as the one disposed within puck 14 of Henson, and the charging port of the article of merchandise.  *Id*. If the adapter cable connecting the alarm module to the article of merchandise is removed or cut, an alarm will be triggered.  *Id.*

A POSA would have been motivated to provide further security redundancy by replacing the male plug of the short adapter cable 72 with the electrical security connector disclosed in Kelsch, so that the connection between adapter cable 72 and the article of merchandise can be monitored.  To implement this improvement a POSA would replace the plug of adapter cable 72 with the plug disclosed in Kelsch, dispose connectors 22 and 32 of the plug within adapter cable 72, and connect the ends of connectors 22 and 32 to electronic circuit board (ECB) 58 of puck 14. This improvement would provide an extra layer of security by enabling puck 14 to monitor connection between puck 14, adapter cable 72, and the article of merchandise.  Such modification would have been straightforward, would not require undue experimentation, and would produce predictable results.  Thus, claim 11 of the '274 Patent is obvious over Henson in view of Vogt and further in view of Kelsch.

D.  Claims 14, 20, and 22 of the '274 Patent and claims 13 and 16 of the '253 Patent are obvious over Henson in view of Vogt and further in view of Tzeng

Claims 14, 20, and 22 of the '274 Patent and claims 13 and 16 of the '253 Patent pertain to connection between the sensor and the cable. Specifically claim 14 of the '274 Patent and claim 13 of the '253 Patent require that the optical transceiver within the sensor and the optical transceiver within the cable be able to rotate with respect to one another.  Claim 20 of the '274 Patent requires that there be an "air gap" between the first and the second optical transmitters.

When modifying Henson to include the first and second transceivers of Vogt, a POSA will have to choose a joint suitable for optical connections.  This search would lead a POSA to

US Pat. No. 8,909,008 (Tzeng), which issued on December 9, 2014 and, therefore, is prior art against the '274 and the '253 Patents. When selecting a suitable joint, a POSA would be motivated to select such a joint that would prevent cable 28 of Henson from becoming tangled. It was common knowledge in the art prior to the priority date of the '274 Patent that "[a] *rotary coupler* prevents the fiber or cord from becoming twisted as the data source moves or rotates with respect to the data destination." Tzeng at 1:18-21. For this reason, a POSA would be motivated to use a rotary coupler to attach cable 28 to puck 14, which is exactly Tzeng teaches. Tzeng discloses that "[a] rotary optical joint assembly includes a rotatable optical coupler and an optical signal processing system. The rotatable optical coupler aligns two optical fibers for optical communication across a rotary optical junction." Tzeng at Abstract.

To achieve a connection between puck 14 and cable 28 that would prevent cable 28 from becoming twisted as customers interact with hand-held 46, a POSA would be motivated to combine Henson in view of Vogt with the optical rotary coupler of Tzeng. Thus, it would have been obvious to configure the second optical receiver in cable 28 to rotate with respect to first optical receiver within puck 14 by using the optical rotary coupler to connect cable 28 to puck 14. Therefore, claim 14 of the '274 Patent and claim 13 of the '253 Patent are obvious over Henson in view of Vogt and further in view of Tzeng.

With respect to claim 20 of the '274 Patent, the rotary joint of Tzeng provides an air gap separating the first and the second optical transceivers. Tzeng at 7:61-66. Therefore, this claim is obvious.

Claim 22 of the '274 Patent and claim 16 of the '253 Patent introduce a limitation requiring "a releasable connector configured to releasably engage the cable and the sensor." As established above, a POSA would have been motivated to connect the cable and the sensor

using an optical rotary coupler disclosed in Tzeng.  The rotary coupler disclosed in Tzeng is capable of releasing the connection between the mating components, and therefore satisfies the "releasable connector" limitation.  Thus, claim 22 of the '274 Patent and claim 16 of the '253 Patent are obvious over Henson in view of Vogt and further in view of Tzeng.

E.  Claims 23 and 24 of the '274 Patent and claims 17 and 18 of the '253 Patent are obvious over the combination of Henson, Vogt, and McDonald

Claims 23 and 24 of the '274 Patent and claims 17 and 18 of the '253 Patent pertain to means of connecting the cable to the sensor.  When improving the security device of Henson in view of Vogt by disposing optical transceivers within the sensor and the cable, a POSA would search for a coupling, joint, or connector to attach the cable to the sensor for optical applications.  This search would lead to US Pat. No. 6,648,520 (McDonald) entitled "Fiber Optic Plug," which issued on November 18, 2003 and, therefore, qualifies as prior art against the '274 and the '253 Patents.  It would have been obvious to use the fiber optic plug disclosed in McDonald to connect the cable to sensor in the security device taught in Henson in view of Vogt.

With respect to claim 23 of the '274 Patent and claim 17 of the '253 Patent, McDonald discloses that the male plug of the cable threadably engages the corresponding female receptacle.  McDonald at 13:66—14:1.  Therefore, when Henson in view of Vogt is combined with McDonald, it is obvious that the releasable connector disclosed in McDonald is configured to threadably mate with the receptacle disposed within the sensor.

With respect to claim 24 of the '274 Patent and claim 18 of the '253 Patent, McDonald discloses that the fiber optic plug comprises a threaded collar.  McDonald at 13:46-49.  Thus, these claims are also obvious over Henson in view of Vogt and further in view of McDonald.

25

F.   Claim 25 of the '274 Patent is obvious over combination of Henson, Vogt, McDonald, and Cornwell

Claim 25 of the '274 Patent introduces a limitation requiring "a clip configured to removably secure the collar to the end of the cable."  With respect to this limitation, McDonald discloses that it is desirable to removably retain the threaded collar on the end of the cable.  *See* McDonald at 13:18-21.  A search for connectors configured to achieve this functionality would lead a POSA to US Pub. No. 2006/0049587 (Cornwell) entitled "Tool Connector," which was published on March 9, 2006.  Cornwell discloses a mechanism for securing a collar at the end of a tool shaft using a "collar retaining clip."  Cornwell at [0018].  It would have been obvious to modify the releasable connector disclosed in McDonald to include the collar retaining clip of Cornwell to removably secure the collar to the shaft of the fiber optic plug disposed at the end of the cable to achieve an objective disclosed in McDonald.  Thus, claim 25 of the '274 Patent is obvious over combination of Henson, Vogt, McDonald, and Cornwell.

In addition to the specific reasons for combining various prior art references discussed above, the motivation to combine arises from many sources, including the prior art (specific and as a whole), common knowledge, common sense, predictability, expectations, industry trends, design incentives or need, market demand or pressure, market forces, obviousness to try, the nature of the problem faced, or knowledge possessed by a person of ordinary skill.  Defendant reserves the right to rely on the knowledge of those skilled in the art, the testimony of expert witnesses, or other prior art, to show that it would have been obvious to combine the prior art references as discussed above and in the attached claim charts.

The grounds for invalidity that render the Asserted Claim obvious are identified in the claim charts attached as Exhibits A and B (collectively, "Invalidity Charts") and listed in Tables 2 and 3, provided below.  These Invalidity Charts identify where, specifically in each item of prior

art, each element of the Asserted Claims is found. Each Invalidity Chart identifies (by citation) the disclosures within the prior art references that teach the relevant claim elements or the rationale supporting the combinations.

Defendant further reserves the right to amend or otherwise modify this disclosure if and when Plaintiff provides further relevant information (e.g., further information regarding Plaintiff's claim construction positions), the Court provides further relevant information (e.g., a claim construction ruling), and/or other circumstances change.

**Table 2: Grounds for invalidity with respect to the '274 Patent**

| Ground | Claims | Prior Art |
|--------|--------|-----------|
| A | 1, 4, 9, 34-36, and 38-39 | Henson in view of Vogt |
| B | 10, 19, 30, 31, and 33 | Henson in view of Vogt and further in view of Fawcett |
| C | 11 | Henson in view of Vogt and further in view of Kelsch |
| D | 14, 20, 22 | Henson in view of Vogt and further in view of Tzeng |
| E | 22-24 | Henson in view of Vogt and further in view of McDonald |
| F | 25 | Combination of Henson, Vogt, McDonald, and Cornwell |

**Table 3: Grounds for invalidity with respect to the '253 Patent**

| Ground | Claims | Prior Art |
|--------|--------|-----------|
| A | 1, 4, 28, 30, and 32 | Henson in view of Vogt |
| B | 9 and 27 | Henson in view of Vogt and further in view of Fawcett |
| D | 13 and 16 | Henson in view of Vogt and further in view of Tzeng |
| E | 16-18 | Henson in view of Vogt and further in view of McDonald |

While Defendant has identified citations in the references for the claim element, each and every disclosure of the same element in the same reference is not necessarily identified. Citations to particular figures in the prior art are to be understood as encompassing the text pertaining to the cited figures. Similarly, where a cited portion of text refers to one or more figure, those figures are also encompassed within the citation.

For any claim element that Plaintiff alleges is not disclosed in a particular prior art reference, Defendant reserves the right to assert that such element is inherent, that the element would have been obvious to one of ordinary skill in the art at the relevant time, or that the element is disclosed in one or more prior art references that individually or in combination would have rendered the asserted claim obvious. Defendant further reserves the right to identify and rely on additional art or teachings within the cited art. Unless otherwise stated, it should be presumed that Defendant intends to rely upon each reference in its entirety to the extent relevant or appropriate,

including references cited in or referenced within the prior art identified below. Defendant may rely on uncited portions of the prior art references and on other publications and expert testimony to provide context and/or clarification to the cited prior art. Defendant may also rely on uncited portions of the prior art references, other publications, and the testimony of experts to establish that a person of ordinary skill in the art would have been motivated to modify or combine certain of the cited references so as to render the claims obvious.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 11, 2019, I served a true and accurate copy of **DEFENDANT'S PRELIMINARY INVALIDITY CONTENTIONS,** via e-mail and U.S. First Class Mail, to:  **James M. Matulis, Esq.**, 9806 Gretna Green Dr., Suite 100, Tampa, FL 33626 (jim@matulislaw.com) and **Tim F. Williams, Esq.**, Dority & Manning, P.A., P.O. Box 1449, Greenville, SC 29602-1449 (timw@dority-manning.com), counsel for Plaintiff.

*/s/ Richard E. Fee*
Richard E. Fee
Florida Bar No. 813680
Kathleen M. Wade
Florida Bar No. 127965
FEE & JEFFRIES, P.A.
1227 N. Franklin Street
Tampa, Florida 33602
(813) 229-8008
rfee@feejeffries.com
kwade@feejeffries.com
aperez@feejeffries.com

and

Lee Grossman
(*Admitted Pro Hac Vice*)
Grossman Law Offices
225 W. Washington St., Suite 2200
Chicago, IL 60606
Phone: (312) 621-9000
lgrossman@grossmanlegal.com

*Counsel Defendant, Vanguard Products Group, Inc. d/b/a Vanguard Protex Global*

29