IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| InVue Security Products Inc.,<br><br>    Plaintiff,<br><br>    v.<br><br>Vanguard Products Group, Inc. d/b/a Vanguard Protex Global,<br><br>    Defendant. | **PLAINTIFF INVUE SECURITY PRODUCT'S MOTION FOR PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW**<br><br>Civil Case No.: 8:18-CV-02548-VMC-SPF |

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| InVue Security Products, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Vanguard Products Group, Inc. d/b/a Vanguard Protex Global, <br><br> Defendant. | No.: 8:18-cv-02548-VMC-SPF |

**AFFIDAVIT OF ANDREW MOOCK**

I, Andrew Moock, being duly sworn upon my oath do hereby state the following to be true and accurate:

1. I am over the age of 18 years and not laboring under any disabilities. I have personal knowledge of the facts and matters set forth herein.

2. I serve as Executive Vice President of InVue Security Products, Inc. (InVue). My responsibilities include management of engineering, operations, information technology, financial, and legal aspects of InVue's business. I have been employed with InVue since 1986. InVue's North American headquarters is located in Charlotte, North Carolina. I have personal knowledge of the competitive environment in which InVue has been conducting its business since at least 1986 as well as the matters I now set forth below.

**Background**

3. Since 1983, InVue has provided innovative security systems for protecting merchandise, which over time has evolved to include merchandise such as portable electronic devices (e.g., tablets, mobile phones, etc.) placed on display in a retail environment. These systems allow the retailer to secure expensive merchandise against theft while, at the same time, facilitating

desirable customer interaction such as handling of the merchandise and trying features along with related accessories while in the store.

4. InVue has invested over $ in research and development of such merchandise security systems in just the last five years alone. InVue has also expended substantial amounts in applying for both United States patents and foreign patents to protect multiple innovations in the products that InVue has developed, sold, and continues to sell through-out the United States and world-wide.

5. An illustrative example of one such merchandise security system having multiple patented innovations is shown in the photograph below, which depicts InVue's Series 1560 providing security for a mobile phone and a related accessory (a watch):



6. Another example is InVue's Series 1060 product, shown in the photograph below providing security for a mobile phone and another related accessory (a speaker).



7. InVue does not have a licensing program whereby it seeks royalties in return for the use of its U.S. patents by licensees. Instead, InVue relies heavily on its patents to prevent competitors from copying and otherwise exploiting the innovative features InVue develops and sells to various retailers.

8. For example, innovations utilized by InVue's Series 1560 products are protected by over twenty-five U.S. patents including the following asserted in the present litigation against Vanguard: U.S. Patent Nos. 9,747,765; 9,805,564; 9,818,274; 10,008,082; 10,043,358; and 10,062,253. Similarly, innovations utilized by InVue's Series 1060 are also protected by over twenty-five U.S. patents including the following asserted in the present litigation against Vanguard: U.S. Patent Nos. 9,747,765; 9,805,564; 9,818,274; 10,008,082; 10,043,358; and 10,062,253. InVue has provided notice to its competitors through e.g., patent marking of the S1060 and S1560 products since before the present lawsuit against Vanguard was filed. *See* Ex. 27 (InVue's Answer to Interrogatory No. 5); see also Ex. 28 (https://invue.com/patents/).

9. In addition to the present litigation against Vanguard, InVue has filed multiple actions against other competitors seeking to enforce the exclusionary rights of its patents rather than license. The table below provides a listing of these suits and the related InVue patents:

| Case Caption | Civil Action Number and Venue | Dated Filed | Patents Asserted |
|---|---|---|---|
| InVue Security Products, Inc. v. Sennco Solutions, Inc. | 3:10-cv-00046 (W.D.N.C.) | 2/3/10 | 7,629,895 |
| InVue Security Products, Inc. v. Langhong Technology Co., Ltd. | 4:13-cv-00457 (N.D. Tex.) | 6/5/13 | 7,629,895<br>7,710,266<br>7,737,843<br>7,740,214 |
| InVue Security Products, Inc. v. Kum Oh Electronics Co., Ltd. | 3:13-cv-00465 (W.D.N.C.) | 8/14/13 | 7,737,843 |
| InVue Security Products, Inc. v. Hangzhou Langhong Tech. Co. Ltd. | 3:14-cv-00654 (W.D.N.C.) | 11/25/14 | 8,890,691<br>8,896,447 |
| InVue Security Products, Inc. v. Mobile Tech, Inc. | 3:15-cv-00610 (W.D.N.C.) | 12/15/15 | 8,884,762<br>9,135,800<br>9,269,247 |
| InVue Security Products, Inc. v. Mobile Tech, Inc. | 3:16-cv-00553 (W.D.N.C.) | 7/19/16 | 9,396,631 |
| InVue Security Products, Inc. v. Mobile Tech, Inc. | 3:16-cv-00734 (W.D.N.C.) | 10/25/16 | 9,478,110 |
| InVue Security Products, Inc. v. Mobile Tech, Inc. | 3:17-cv-00075 (W.D.N.C.) | 2/21/17 | 9,576,452 |
| InVue Security Products, Inc. v. Mobile Tech, Inc. | 3:17-cv-00270 (W.D.N.C.) | 5/23/17 | 9,659,472 |
| InVue Security Products, Inc. v. Mobile Tech, Inc. | 3:17-cv-01356 (D. Or.) | 8/30/17 | 8,884,762<br>9,135,800<br>9,269,247<br>9,659,472 |
| InVue Security Products, Inc. v. Mobile Tech, Inc. | 1:18-cv-02653 (S.D. Ind.) | 8/28/18 | 10,062,266 |
| InVue Security Products, Inc. v. Mobile Tech, Inc. | 3:18-cv-01720 (D. Or.) | 9/27/18 | 10,062,266 |
| InVue Security Products, Inc. v. Vanguard Products Group, Inc. | 8:18-cv-02548 (M.D. Fla.) | 10/16/18 | 10,008,082<br>10,043,358<br>10,098,481<br>9,747,765<br>9,805,564<br>9,818,274<br>9,972,178 |
| InVue Security Products, Inc. v. Mobile Tech, Inc. | 3:19-cv-00407 (D. Or.) | 3/18/19 | 10,055,954<br>9,830,787 |

10.      ████████████████████████████████████████████

████████ is based on the sale of merchandise security systems like the S1060 and S1560. InVue relies on revenue from such sales to continue its investment in innovation and research and to maintain its competitiveness as an industry leader.

11.     As depicted in the above photographs, merchandise security systems such as InVue's S1060 and S1560 form part of the product display in a retailer's store. Such systems can provide e.g. a pedestal and other components upon which the merchandise is supported and presented to a retail customer. For example, a retailer may use the security systems to position multiple electronic devices (e.g., mobile phones) in a side-by-side arrangement on a table or shelf so that the customer can e.g., compare devices made by different manufacturers. An example of multiple InVue S1560s placed in a side-by-side arrangement in a Verizon setting are depicted in the photo below. For each item of merchandise/mobile phone, an S1560 is provided to secure the phone while still allowing the customer to pick up and use the phone's features.



12.     InVue and Vanguard are direct competitors in the market for such merchandise security systems and have been since at least 2005. Retailers for which InVue and Vanguard have

directly competed for business in past years include Verizon, Wal-Mart, T-Mobile, Sprint, and others.

**Damages to InVue**

13. As of May 24, 2019, Vanguard continues to offer the CR360 (including the CR360-UTC) in the United States. The CR360 remains on Vanguard's website at

https://www.vanguardprotexglobal.com/products/cr360/ and

https://www.vanguardprotexglobal.com/products/cr360-utc-2/

14. ███████████████████████, Verizon's Next Gen program is currently continuing as it builds out such stores throughout the United States using Vanguard's infringing CR360 (used herein to include the CR360 and the CR360-UTC). While the precise number of Verizon Next Gen stores already supplied with the Vanguard's 360 is unknown, the Next Gen project is well underway with stores already in North Carolina, Ohio, New York, Illinois, and California, just to name a few. For each Next Gen store, Vanguard will place multiple CR360 units – one for each electronic device it is used to display, typically 20-35 positions per store. It is my belief that installations of the CR360 will expand beyond Next Gen stores into additional Verizon stores.

15. The damage to InVue inflicted by Vanguard's infringing CR360 includes substantial tangible and intangible losses that continue to accrue as Vanguard continues its placement of the CR360 in Verizon's stores.

16. ████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████

17. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

18. Vanguard's CR360 has caused other losses that continue to occur including an erosion of the prices InVue is able to obtain on e.g., the S1560 from Verizon. ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████

19. The price erosion caused by Vanguard's placement of infringing CR360 will also cause InVue a loss of goodwill with customers like Verizon. As Vanguard continues placing its infringing CR360 products in Verizon's Next Gen stores at its undercut pricing, ████████

████████████████████████████████████████████████████████████████

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Such a request will likely only provoke a negative response from Verizon and further risk alienating what was once one of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

20. Because of Verizon's market dominance and well-known name, having Verizon as a customer also provided substantial intangible value to InVue including goodwill and a very favorable reputation in the industry for merchandise security products. In marketing security products to other customers, for example, InVue was able to tout itself as a primary supplier of merchandise security to Verizon in order to successfully sell security systems and related products to other customers. For 2014, Verizon gave InVue its "Verizon Retail Vendor Partnership Award" – further building InVue's reputation in the industry.

21. In addition to word-of-mouth, InVue has included references to its relationship with Verizon in advertising materials provided to potential customers. This long term relationship supported InVue's advertising and marketing as a leader and innovator in the market of merchandise security systems and related products. The value of having this relationship with Verizon cannot be completely quantified, but it also cannot be overstated because of Verizon's own reputation in the industry. This is at least one of the reasons that InVue aggressively pursued Verizon's Next Gen RFP. Because Vanguard is currently providing its infringing CR360 into Verizon's Next Gen stores (for which Verizon has indicated there will be ▇▇▇▇▇▇▇▇), InVue's reputation in the industry is continuing to be damaged substantially by this loss of Verizon to Vanguard.

22. The loss of Verizon's Next Gen RFP to Vanguard's CR360 also represents an unquantifiable loss by InVue of future sales to Verizon. Prior to Vanguard's CR360 sales to Verizon, InVue would receive additional sales of other items along with the sale of merchandise security systems like the S1560. For example, InVue would sell additional security keys (used to disarm or unlock the security system), adhesives (used to secure the merchandise to the security

system – and needed as old merchandise is removed and new merchandise is secured), programming stations (used to program the security keys), charging stations (used to charge the keys), high security brackets (used with a security system like the S1560 to further secure the product), and other accessory items.

23. In addition, every few years, retailers like Verizon may refresh or update their store including replacing the security systems with the next generation or model of the same security system from the same manufacturer. Also, due to wear and tear from use by customers in the store, parts of the merchandise security systems may need repair or replacement.

24. InVue has also successfully launched software compatible with the S1560 that it could sell to Verizon but will not be able to even offer for the Next Gen stores so long as Vanguard is providing its infringing CR360.

25. While a valuable amount of these related and follow-up sales to Verizon occurred over the course of its relationship with InVue, the economic value of these related sales and follow-up sales that will be lost to Vanguard as a result of the Next Gen project cannot be reasonably calculated. In part, this is because such depends heavily on variables such as usage, the unpredictable timing of decisions (like when to replace) that Verizon might make in the future, and Verizon's own growth.

26. InVue manufactures the S1560 and S1060. At the time of InVue bid for Verizon's Next Gen's RFP, InVue had more than enough capacity to supply S1560s for all of Verizon's planned Next Gen stores. As of the time of this affidavit, InVue still has more than enough capacity to supply S1560s for all of Verizon's planned Next Gen stores and any other customers that Vanguard currently supplies.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Andrew Moock, Executive Vice President
InVue Security Products, Inc.

May 24, 2019
Charlotte, North Carolina

SWORN to before me this 24th day
of _____May_____, 2019.

_Lauren N. Martin_
Notary Public for North Carolina
My commission expires: Jan. 16, 2023.